[847 NYS2d 518]

CHOCK FULL O'NUTS CORPORATION, Plaintiff, and STAHL MID-
TOWN PROPERTIES LLC, Intervenor-Respondent, v NRP LLC
I, Appellant, et al., Defendant.

First Department, December 11, 2007

## APPEARANCES OF COUNSEL

*Litman & Jacobs*, New York City (*Betty Jane Jacobs* of counsel), for appellant.

*Duane Morris LLP*, New York City (*Fran M. Jacobs* of counsel), for Stahl Midtown Properties LLC, respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

This action concerns 1420 Broadway, a property in the Times Square area comprising a free-standing, three-story retail building and the land on which it is built. The property is owned by defendant NRP LLC I (NRP), and was formerly leased to plaintiff Chock Full O'Nuts Corporation (CFON) under a net lease set to expire on March 12, 2001. After the commencement of this action, CFON assigned its interest in the property to intervenor-plaintiff Stahl Midtown Properties LLC (Stahl). At all relevant times, the entire property was occupied by CFON's and Stahl's sole subtenant, defendant Christine, Inc., pursuant to a sublease signed in 1992.

On a prior appeal, we affirmed Supreme Court's determination that CFON's lease expired without renewal on March 12, 2001 (*see Chock Full O'Nuts Corp. v NRP LLC I*, 11 AD3d 385 [2004]). Pursuant to the affirmed order, the matter was referred to a Special Referee to hear and report with recommendations on the issue of CFON's and Stahl's liability, if any, for holdover damages for the period from March 13, 2001 to May 30, 2003, during which Christine, the subtenant, remained in possession of the property (*id.*). During the holdover period, Christine operated a delicatessen with seating on the first two floors of the building and a nail salon on the third floor. The net rent under the sublease during the holdover period was $254,000 per year.

At the hearing before the Special Referee, NRP presented evidence that the gross area of the first floor was 2,286 square feet, that of the second floor 2,286 square feet, and that of the third floor 1,975 square feet. Based on comparisons to other retail space in the vicinity, NRP's appraisal expert appraised the fair market rental value (FMRV) of the first floor at $125 per

square foot, and the FMRV of the second and third floors at $50 per square foot.[1]

Stahl's appraisal expert accepted the comparison properties used by NRP's expert and agreed with NRP's rate of $125 per square foot for the first floor, but appraised the second and third floors at somewhat lower rates ($40 per square foot and $30 per square foot, respectively). In addition, Stahl's expert disagreed with NRP's expert about the number of square feet on each floor by which the applicable rate should be multiplied. Stahl's expert pointed out that, because the comparison properties were in multi-tenant buildings, their rates were based, not on gross area, but on the "usable area" available for business operations. Such usable area excludes the thickness of exterior walls and space occupied by structures serving more than one tenant, such as stairs, elevator shafts, vents and ducts. Stahl's expert opined that, because the per-square-foot rate for each of the comparison properties was based on the property's usable area, the FMRV of 1420 Broadway should also be calculated based on usable area, excluding the space that would have been excluded from usable area had it been a multi-tenant building. After making such exclusions, Stahl's expert calculated the usable area of the building as 1,653 square feet for the first floor (as opposed to 2,286 gross square feet), 1,572 square feet for the second floor (as opposed to 2,286 gross square feet), and 1,650 square feet for the third floor (as opposed to 1,975 gross square feet).

The Special Referee accepted Stahl's per-square-foot rates for the second and third floors, but agreed with NRP that gross area, rather than usable area, should be used to derive 1420 Broadway's FMRV, on the ground that there had been only one tenant in the building during the holdover period and for the previous 40 years. Using the gross area figure for each floor, the Referee determined that the annual gross FMRV for the holdover period was $436,440, which, after deductions for the costs of real estate taxes, insurance, and management (paid by the tenant under a net lease), resulted in an annual net FMRV of $325,279. Applying that annual figure to the entire holdover period, and deducting the use-and-occupancy payments made by Stahl pursuant to the court's order during the litigation, the Referee determined that CFON and Stahl owed NRP holdover damages of $319,130.89, plus interest.

---

1. The parties agree that the building's basement space is not counted in determining FMRV because that space is not used as a sales area.

NRP moved to confirm the Referee's report, and Stahl moved to reject it. Supreme Court rejected the Referee's report on the ground that the Referee's valuation of 1420 Broadway was "based on a comparison of non-analogous spaces," in that the FMRV of the comparison properties was calculated based on usable area, while gross area had been used to determine the subject building's FMRV (2005 NY Slip Op 30146[U], *7). Accordingly, the court referred the matter back to the Referee to issue a supplemental report calculating 1420 Broadway's FMRV based on its usable area. The Referee's subsequent supplemental report determined, based on the building's usable area as calculated by Stahl's expert, that the annual gross FMRV was $319,005, which (after making deductions for real estate taxes, insurance, and management fees in accordance with the Referee's findings) translates to annual net FMRV of $207,844. It is undisputed that this valuation figure, when applied to the holdover period, and reduced by the amount of Stahl's use-and-occupancy payments, yields a damages figure of $59,795.20. Judgment in that amount, plus interest and costs, was entered in favor of NRP against CFON and Stahl, jointly and severally. NRP has appealed.

Initially, we reject NRP's argument that a Cushman & Wakefield report appraising the property's gross annual FMRV at $516,000 is binding on Stahl. Because plaintiffs failed to secure any formal grant of relief based on the 1999 Cushman & Wakefield report, which valued the demised premises at $516,000, the doctrine of inconsistent positions is not implicated (*see Banque Indosuez v Sopwith Holdings Corp.*, 257 AD2d 519, 520 [1999], *lv denied* 93 NY2d 806 [1999]). At most, the statements relying on the report constitute an informal judicial admission that is not conclusive but "is merely evidence of the fact or facts admitted" (Prince, Richardson on Evidence § 8-219, at 530 [Farrell 11th ed]), "the circumstances of which may be explained at trial" (*Bogoni v Friedlander*, 197 AD2d 281, 293 [1994], *lv denied* 84 NY2d 803 [1994]). Supreme Court thus correctly held that the 1999 Cushman & Wakefield report, prepared two years before the valuation date, did not preclude plaintiffs from offering other evidence as to the FMRV of the premises (*see Baje Realty Corp. v Cutler*, 32 AD3d 307, 310 [2006]).

Turning to the merits of the valuation issue, we take note of the matters that, at this stage of the litigation, are not in dispute. To begin, there is no dispute as to the gross area of each of 1420 Broadway's three above-grade floors. Nor is there

any remaining dispute as to the appropriate per-square-foot FMRV of each of these floors ($125 for the first, $40 for the second, $30 for the third), as determined by the Referee based on a comparison to the rents of other retail properties in the vicinity.[2] The parties also agree that these other properties were sufficiently similar to 1420 Broadway to provide meaningful comparisons, notwithstanding that, while 1420 Broadway was a single-tenant building at all relevant times, each comparison property was part of a multi-tenant building. Finally, the parties appear to agree that, under applicable professional standards for advertising commercial space being offered to let, the square footage of space within a multi-tenant building (such as the comparison properties) is determined by usable area, excluding exterior walls and structures serving more than one tenant, while the square footage of a single-tenant building (such as 1420 Broadway) is determined by its gross area, with no exclusions.

The key point on which the parties disagree is whether a value per square foot derived from comparison to properties in multi-tenant buildings whose size is expressed in terms of usable area (excluding exterior walls and space occupied by structures benefitting other tenants) can validly be applied to determine the value of the gross area (without exclusions) of the subject property, a building that had only one tenant. NRP argues that the study of the comparison properties yielded values per square foot of "rentable area" for comparable retail uses in the relevant vicinity, a value that may be used for any property put to that use in the vicinity regardless of whether "rentable area" in that particular building is defined as gross area or usable area. Therefore, NRP reasons, the per-square-foot values derived from the comparison properties can validly be applied to 1420 Broadway's rentable area, even if 1420 Broadway's rentable area is defined differently from that of the comparison properties.

Stahl argues that a square foot of usable area and a square foot of gross area are "completely different units of measure," and that the Referee's analysis was therefore based on an invalid comparison of nonanalogous spaces—a comparison of "apples to oranges," as the saying goes. Stahl points to a leading treatise on real estate appraisal, which, in discussing the valuation of a subject property by comparison to transactions in

---

2. NRP no longer advances its appraiser's view that the second and third floors should be valued at $50 per square foot.

other properties, states: "Because like units must be compared, each sale price [of a comparison property] should be stated in terms of appropriate units of comparison" (Appraisal Institute, Appraisal of Real Estate, at 424 [12th ed]). The accompanying table, entitled "Typical Units of Comparison," lists "price per square foot of gross building area" and "price per square foot of usable area" as distinct units of comparison (*id.*). Stahl reasons that, because all of the comparison properties used in the valuation process were priced "per square foot of usable area" (by reason of being in multi-tenant buildings), the subject building must be valued on the same unit basis. Stated otherwise, Stahl's position is that, since none of the comparison properties were priced "per square foot of gross building area," the record provides no evidentiary basis for valuing the subject building on that unit basis.[3]

We agree with Stahl insofar as it argues that NRP—which had the burden of proving its damages—failed to prove the FMRV of the gross area of 1420 Broadway. Regarding proof of a property's FMRV, the Court of Appeals has stated:

> "Estimated annual rent, or market rent, should be determined by analysis of the rent paid for other comparable properties and then imputed to the subject property:
>
> " 'The rents of comparable properties can provide a basis for estimating market rent for a subject property *once they have been reduced to the same unit basis applied to the subject property*. Comparable rents may be adjusted just as the transaction prices of comparable properties are adjusted in the sales comparison approach' (Appraisal Inst, Appraisal of Real Estate, at 481 [11th ed])." (*Matter of Saratoga Harness Racing v Williams*, 91 NY2d 639, 644 [1998] [emphasis added].)[4]

---

**3.** Contrary to NRP's contention, Stahl's argument concerning FMRV, as clarified by its appellate brief, is not based on the view that the best use of the subject property is as a multi-tenant building.

**4.** The current (12th) edition of the appraisal treatise contains the same language quoted by the Court of Appeals in the passage from *Saratoga* set forth above (*see* Appraisal Institute, Appraisal of Real Estate, at 500 [12th ed]). We note that *Saratoga* and the treatise use the term "market rent" rather than FMRV, but the meaning appears to be the same (*see id.* at 480 ["Market rent is the rental income a property would probably command in the open market"]).

In this case, NRP never "reduced [the rents of the comparison properties] to the same unit basis [it seeks to have] applied to the subject property" (*id.*). The analysis of the comparison properties yielded a price per square foot of usable area, which, on its face, is not "the same unit basis" (*id.*) as price per square foot of gross area. Stated otherwise, we do not think it logically valid to take a rate per unit $x$ and multiply it by a quantity of unit $y$, which is what NRP seeks to do. While it may be that the appraisal profession has developed an adjustment factor by which, in a given market, price per unit of usable area can be converted to price per unit of gross area, NRP did not offer any evidence of the availability of such an adjustment factor in this case. Further, while we cannot exclude the possibility that, in a given market, price per unit of usable area may be the same as price per unit of gross area, NRP offered no evidence that this was true at the time, and in the market, at issue here.

Although NRP failed to prove the FMRV of 1420 Broadway's gross area, we agree with its alternative argument that, at a minimum, it should be awarded damages in a principal amount equal to the profit CFON and Stahl realized from the rent they collected from the subtenant during the holdover period.[5] That amount is approximately $100,000 greater than the principal amount of damages Supreme Court awarded NRP based on the FMRV of the building's usable area calculated by Stahl's expert. We therefore modify the judgment to increase NRP's damages to that extent, for the reasons discussed below.

As a trespasser, a holdover tenant is liable to the landlord for damages in an amount no less than the gain the tenant realized from holding over (*see De Camp v Bullard*, 159 NY 450, 454-455 [1899]; *Sakele Bros. v Safdie*, 302 AD2d 20, 27 [2002]). If the law were otherwise, it " 'would place a premium on trespassing' by 'mak[ing] the position of the trespasser more favorable than that of one lawfully contracting' " (*Sakele Bros.*, 302 AD2d at 27, quoting *De Camp*, 159 NY at 454). Moreover, that the subtenant paid net rent of $254,000 per year during the holdover period (pursuant to a sublease signed in 1992) plainly indicates that the net FMRV of the building's usable area calculated by Stahl's expert ($207,844 per year) understates the true value of the leasehold estate during the holdover period by at least $46,156 per year. Therefore, pursuant to this Court's power to substitute its own findings of fact for those made by

5. We reject Stahl's contention that this argument is not preserved.

the trial court in a bench trial (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]), we direct that the principal amount of NRP's damages be increased to $161,723.20 (monthly net rental under the sublease of $21,166.67, multiplied by 26½ months of the holdover, less $399,193.55 previously paid by Stahl for use and occupancy during the holdover period pursuant to court order).[6]

In conclusion, we note that if NRP's expert had addressed the issue raised by Stahl—specifically, the discrepancy between gross area and usable area—there may very well have been a basis on which to grant NRP all the relief it sought. The record, however, offers nothing to resolve this discrepancy. We are therefore compelled to grant NRP a lesser measure of relief.

Accordingly, the judgment of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered August 10, 2006, which awarded NRP holdover damages against CFON and Stahl, jointly and severally, in the amount of $59,795.20, plus interest and costs, should be modified, on the law and the facts, the principal amount of such damages increased to $161,723.20, and otherwise affirmed, with costs in favor of NRP. The Clerk is directed to enter an amended judgment in favor of NRP against CFON and Stahl, jointly and severally, in the amount of $161,723.20, plus statutory interest from April 15, 2002, costs and disbursements. The appeal from the order, same court and Justice, entered July 31, 2006, directing entry of said judgment, should be dismissed, without costs, as subsumed in the appeal from the judgment.

Tom, J.P., Saxe, Gonzalez and McGuire, JJ., concur.

Judgment, Supreme Court, New York County, entered August 10, 2006, modified, on the law and the facts, the principal amount of such damages increased and otherwise affirmed, with costs in favor of NRP. The Clerk is directed to enter an amended judgment in favor of NRP against Chock Full O'Nuts and Stahl, jointly and severally, as indicated. Appeal from order, same court, entered July 31, 2006, directing entry of said judgment, dismissed, without costs, as subsumed in the appeal from the judgment.

---

**6.** Since the judgment, as modified by this decision, is no longer based on the FMRV calculation of Stahl's expert, we need not reach NRP's arguments attacking Stahl's calculation of 1420 Broadway's usable area.