[872 NYS2d 93]

Ficus Investments, Inc., et al., Appellants-Respondents, v Private Capital Management, LLC, et al., Defendants, and Thomas B. Donovan et al., Respondents-Appellants.

Ficus Investments, Inc., et al., Respondents, v Private Capital Management, LLC, et al., Appellants, et al., Defendants.

Ficus Investments, Inc., et al., Respondents, v Private Capital Management, LLC, et al., Defendants, and Thomas B. Donovan, Appellant.

First Department, January 20, 2009

## APPEARANCES OF COUNSEL

*Alston & Bird, LLP*, New York City (*John F. Cambria, Craig Carpenito, Jill C. Barnhart* and *Betty Weinberg Ellerin* of counsel), for Ficus Investments, Inc. and another, appellants-respondents/respondents/respondents.

*Schlam Stone & Dolan LLP*, New York City (*David J. Katz, Richard H. Dolan, Michael C. Marcus, Jeffrey M. Eilender, John M. Lundin* and *Andrew S. Harris* of counsel), for Thomas B. Donovan, respondent-appellant/appellant/appellant.

*Nitkewicz & McMahon, LLP*, Commack (*Edward J. Nitkewicz* of counsel), for Christopher Chalavoutis and another, respondents-appellants; Private Capital Management, LLC, and others, appellants.

*Port & Sava*, Floral Park (*Gary Port* of counsel), for Michael Bode and another, appellants.

*Daniel S. Torchio*, New York City, for John Kiley, appellant.

## OPINION OF THE COURT

LIPPMAN, P.J.

This action arises out of allegations that Thomas Donovan and other named defendants misappropriated millions of dollars in funds and assets from plaintiff Private Capital Group, LLC. There have been extensive pretrial proceedings, and the parties are appealing four orders granting various forms of relief. The primary issue we address is whether certain individual defendants are entitled to advancement of their expenses under the company's Operating Agreement.

Plaintiff Ficus Investments, Inc. is a Florida corporation with its principal place of business in Florida. Ficus is the managing member and 80% owner of plaintiff Private Capital Group, LLC (the Company), a Florida limited liability company with its principal place of business in New York. The Company is in the business of buying, managing and selling nonperforming real estate mortgages. Defendant Private Capital Management (PCM), a New York limited liability company with its principal place of business in New York, is the Company's minority member and holds the remaining 20% ownership. PCM is owned

equally by defendant Thomas B. Donovan and former defendant Lawrence A. Cline.[1]

The Company began operations in December 2005, capitalized by a series of documented loans provided by Ficus totaling approximately $314 million. Plaintiffs allege that Donovan and Cline soon became dissatisfied with their compensation and, in July 2006, began transferring money from the Company to PCM in a series of undocumented loans. In January 2007, Donovan and Cline transferred $9.872 million from the Company to PCM. Donovan and Cline freely admit that they took this money but assert that, despite the absence of any type of security agreement, the distribution had been authorized by a Ficus representative. When Ficus discovered the transfer, it demanded that the money be returned. Donovan and Cline refused and instead apparently attempted to negotiate changes to the Operating Agreement.

Ficus representatives met with Donovan and Cline on March 20, 2007 to advise them that, as manager, Ficus would be taking control of the Company's accounts, funds and any major new commitments. Since Donovan and Cline maintained the position that they had the authority to manage the Company, Ficus adopted resolutions giving itself authority over the Company's operations and advised Donovan, Cline and the Company's banks of the change.

Plaintiffs commenced this action on or about March 21, 2007, asserting several causes of action, including breach of fiduciary duty, conversion and unjust enrichment. That same morning, plaintiffs allege that defendants began removing books, records and financial information from the Company's Jericho, New York office. The complaint asserts that when Ficus representatives arrived at the premises and began their review of the Company's operations, Donovan and other named defendants were evasive and uncooperative.

During this time, plaintiffs allege, Donovan continued to transfer Company funds to accounts under his control. In support of this allegation, Cline provided an affidavit stating that approximately $12.5 million in Company funds, along with about $3 million remaining from the disputed $9.872 million "loan," were transferred to a bank account in the name of de-

---

1. Cline settled with plaintiffs in July 2007. In connection with the settlement, he returned Company assets worth millions of dollars and agreed to cooperate with Ficus's investigation.

fendant Private Lender Warehouse Corp. After the balance was transferred to another Private Lender Warehouse Corp. account, about $12.5 million of the money was deposited into an account in the name of Private Capital Management Corp. (a separate entity from PCM, the LLC with 20% membership interest in the Company). Plaintiffs allege that the $12.5 million was disbursed to defendants, or to entities under their control—many with confusingly similar names. The balance was apparently disbursed to some of the individual defendants and was used to pay for defendants' litigation expenses.

On March 26, 2007, Supreme Court granted plaintiffs a temporary restraining order preventing defendants from making transfers or distributions in contravention of the resolutions that gave Ficus operational authority, preventing them from removing, destroying, concealing or altering Company books and records or documents pertaining to Company business, and requiring defendants to cooperate with Ficus and give Ficus free access to the premises, books and records.

On April 10, 2007, nearly every Company employee resigned and went to work for Donovan at his new business, Private Capital Management Group of New York, LLC. Ficus then obtained another temporary restraining order giving it control over the Company's day-to-day operations and assets, directing that defendants provide information and Company records pertaining to another entity, Copperfield Investments, Inc.,[2] and preventing defendants from removing or destroying such records. Several days later, the court issued yet another temporary restraining order, requiring the return of any Company assets that had been transferred to Copperfield without full consideration. The court noted, however, that it did not have the power to enjoin Copperfield itself, as Copperfield had not yet been made a party. The court also denied PCM's motion for the appointment of a temporary receiver to run the Company. Later that night, before the complaint was amended to include Copperfield as a defendant, Donovan and Cline placed Copperfield into bankruptcy.

On May 14, 2007, the three temporary restraining orders were consolidated into a preliminary injunction without objection. A few weeks later, Supreme Court issued another injunction—this time preventing defendants from transferring,

---

**2.** Copperfield was an entity owned by Cline that was allegedly occupying office space on the Company's Jericho premises.

concealing or otherwise disposing of the "approximately $9,000,000" that Donovan and Cline had taken as an undocumented "loan" and requiring defendants to post a $1 million undertaking.

After Cline settled with plaintiffs in July of 2007, certain other named defendants also settled, and each agreed to provide information pertaining to the Company. Cline provided an affidavit stating that a portion of the funds that Donovan had taken from the Company and deposited in an account under the name of Private Capital Management Corp. was subsequently used to acquire nonperforming mortgages from North Fork Bank. In addition, the former defendants represented that "[t]here were no active 'separate Donovan businesses' " being run from the Company's Jericho location. Rather, the Donovan-controlled "shell" entities had been completely funded by Company assets.

In December 2007, Supreme Court issued an order preventing defendants from taking any action on specific mortgages without 48 hours' advance written notice to plaintiffs' counsel, including the mortgages purchased from North Fork and various other "missing mortgages" that plaintiffs were unable to locate, which were all allegedly procured with Company funds. The court later clarified the May 2007 preliminary injunction, finding it necessary to turn the mortgages funded with Ficus monies (North Fork and missing mortgages) over to an escrow agent to maintain the status quo and prevent dissipation of the proceeds before the question of who was entitled to the mortgages could be resolved. The court then signed plaintiffs' proposed order designating PHH Corporation escrow agent for the 85 mortgages at issue and directing that defendants deliver the mortgages, all documents pertaining to the mortgages, and any funds received on account of any of the mortgages.

During the course of these proceedings, defendants Donovan, Chalavoutis and Kamran moved by order to show cause for reimbursement and advancement of their fees and expenses related to the litigation. In support of the motion, each defendant included an affirmation and undertaking as required by the Operating Agreement. Defendants also provided invoices documenting their litigation expenses from three law firms, which totaled more than $2.7 million. Supreme Court granted the motion for advancement as to Donovan, but denied it as to Chalavoutis and Kamran, finding that advancement of their expenses was discretionary with the Company since they were not officers under the Operating Agreement. The court also referred

the issue of the reasonableness of Donovan's expenses to a referee.

Most recently, in May 2008, Donovan again moved for the appointment of a temporary receiver, asserting that Ficus had been mismanaging the Company. Supreme Court denied the motion, finding that Donovan failed to demonstrate that the drastic remedy of a temporary receiver was necessary.

We address first the order concerning the advancement of litigation expenses. To determine whether advancement is appropriate, it is necessary to review relevant portions of the Company's Operating Agreement. The agreement designated Donovan its initial chief executive officer (CEO) and Cline its initial president. Ficus, as manager, had sole authority to manage and control the Company's business and affairs, including the power to appoint individuals to serve as officers, to delegate authority and to remove officers. The agreement gave Donovan and Cline general supervision over the Company's business and allowed them, on behalf of the Company, to execute and deliver contracts and certain other documents not requiring approval by the manager. As compensation, the agreement permitted Donovan and Cline to take loans in the amount of $300,000 per year, as draws against their potential future profits. The order of distribution of the Company's net income was repayment of the Ficus loans, return of each member's capital and, finally, distribution to each member in proportion to his or her membership interest. The agreement provides that it will be construed under and governed by Florida law.

The Operating Agreement provides for advancement of expenses and indemnification for members, managers and officers of the Company when certain criteria are satisfied. Officers under the Operating Agreement include the CEO, president, "and such other officers as the Manager may determine." Section 3.4.3 of the Operating Agreement, entitled "Advance for Expenses," provides that

> "[t]he Company must, before final disposition of a
> Proceeding, advance funds to pay for or reimburse
> the reasonable Expenses incurred by a Person who
> is a Party to a Proceeding because he or she is a
> Member, Manager or Officer if such Person delivers
> to the Company a written affirmation of his or her
> good faith belief that his or her conduct does not
> constitute behavior that would result in Liability for
> (i) intentional misconduct or a knowing violation of

law, or (ii) any transaction for which such Member, Manager or Officer received a personal benefit in violation or breach of any provision of this Agreement; and such Member, Manager or Officer furnishes the Company a written undertaking, executed personally or on his or her behalf, to repay any advances if it is ultimately determined that he or she is not entitled to indemnification under this Section 3.4 or the Florida [Limited Liability Company] Act" (subd [a]).

Although the undertaking must be an unlimited obligation of the officer, the Operating Agreement states that the obligation need not be secured and shall be accepted without reference to the officer's ability to repay.

The provision entitled "Obligation to Indemnify; Limits" contains similar language. Section 3.4.2 relieves the Company of the obligation to indemnify a member, manager or officer who "is adjudged liable to the Company or is subjected to injunctive relief in favor of the Company" for intentional misconduct or a knowing violation of law or for any transaction for which the individual received an unauthorized personal benefit.

The Operating Agreement allows, but does not require, the Company to indemnify for or advance expenses to other (non-officer) employees or agents. The agreement also permits officers to apply to a court for indemnification for or advancement of expenses. The court reviews the application de novo and can grant indemnification for or advance expenses if the officer is entitled to same or if, under the relevant circumstances, it would be fair and reasonable. Finally, the agreement provides that the Company is not liable to make a payment "to the extent such Person has otherwise actually received payment (under any insurance policy, agreement or otherwise) of the amounts otherwise payable hereunder."

■ Plaintiffs argue that Donovan's request for advancement should have been denied based on the Operating Agreement because defendants were the subject of multiple injunctions—reasoning that if Donovan would not be entitled to indemnification under the agreement, then the issue of whether he is entitled to advancement of expenses is academic. Supreme Court properly determined that the prior injunctive relief does not foreclose defendants from seeking advancement of their expenses.

As noted above, the Operating Agreement is governed by Florida law, which requires that an agreement be read as a whole to

determine its meaning, rather than as isolated sections or paragraphs (*see Jones v Warmack*, 967 So 2d 400, 402 [Fla App 2007]; *see also Bailey v Fish & Neave*, 8 NY3d 523, 528 [2007]). Here, as plaintiffs argue, the agreement excuses the Company from the duty to indemnify when an officer has been subjected to injunctive relief in the Company's favor on the basis of intentional misconduct, a knowing violation of law or a transaction for which the person received an unauthorized personal benefit. However, the section referring to injunctive relief pertains solely to indemnification. It is separate and distinct from section 3.4.3, which imposes the obligation to advance funds. Advancement is contingent only upon the person's submission of a written affirmation that he or she has not engaged in prohibited conduct and an undertaking to repay any funds disbursed.

Delaware courts have had ample opportunity to address these issues of indemnification for and advancement of expenses and, although not binding as to either Florida or New York law, their holdings can be instructive. Under Delaware law, a clear distinction is drawn between the two provisions: whether an officer is entitled to advancement is determined in a summary proceeding, while the right to indemnification is delayed until the conclusion of the matter (*see Kaung v Cole Natl. Corp.*, 884 A2d 500, 509 [Del 2005]). The rights are recognized as independent of one another, in that "an advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment. The detailed analysis required of such claims is both premature and inconsistent with the purpose of a summary proceeding" (*id.* at 510). Delaware has also noted that one of the beneficial purposes behind both indemnification and advancement is to help attract capable individuals into corporate service by easing the burden of litigation-related expenses (*see Homestore, Inc. v Tafeen*, 888 A2d 204, 211 [Del 2005]). In particular, "[a]dvancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings" (*id.*).

Given the separate purposes of indemnification and advancement, Supreme Court properly determined that the Operating Agreement distinguishes between the relief available to a corporate officer at the conclusion of the proceedings and that which is available while the proceedings are ongoing. Although the indemnification provision in the agreement does not specify

that the injunctive relief must be final or permanent, the intent is clear when the agreement is read as a whole. The advancement provision does not refer to injunctive relief at all. Rather, it states that advancement applies "before final disposition of a Proceeding" and that the officer must repay the advanced funds "if it is *ultimately* determined that he or she is not entitled to indemnification" (emphasis added). This language clearly indicates that advancement does not depend on whether or not the officer will eventually be indemnified.

Thus, the reference to injunctive relief in the indemnification paragraph of the Operating Agreement can best be understood to refer to injunctive relief that is final or permanent in nature. That the provision precludes indemnification when the officer is "adjudged liable . . . or is subjected to injunctive relief" under certain specific circumstances does not indicate that indemnification is foreclosed whenever an officer has been subject to any type of injunction during the course of a proceeding. Such an interpretation would defeat the purpose of the advancement provision. Although ultimately Donovan may not be entitled to indemnification, the issuance of injunctive relief against him during this litigation does not bar him from receiving advancement of his expenses under the terms of the Operating Agreement.

Plaintiffs also argue that the Company should not be required to advance expenses under the section of the Operating Agreement prohibiting duplication of payments. As Supreme Court found, this section of the agreement pertains to funds received as "amounts otherwise payable hereunder"—i.e., amounts that would qualify under the agreement as indemnification for or advancement of expenses that have been received from another source. The funds Donovan allegedly took from plaintiffs and then used to pay legal expenses do not qualify, as they were in no way connected with indemnification or advancement or intended to be used for any such purpose. Moreover, at this stage of the litigation, plaintiffs have yet to prove that Donovan has taken these funds improperly. Mere allegations of theft will not relieve the Company of its obligation to advance expenses, and a request for advancement is not meant to become an adjudication of the merits of the case against the officer. Since Donovan has satisfied the requirements under the Operating Agreement, Supreme Court properly determined that he is entitled to advancement of his expenses.

■ The remaining issue is whether defendants Chalavoutis and Kamran also are entitled to advancement. Plaintiffs' third

amended verified complaint alleges, on information and belief, that Chalavoutis was the Company's former chief financial officer (CFO). In addition, although Chalavoutis was never officially appointed CFO of the Company through the Operating Agreement or otherwise, officers of Ficus have specifically referred to him as CFO, and a Ficus representative acknowledged in a sworn statement that Chalavoutis was held out, was referred to and functioned as the chief financial officer. The complaint refers to Kamran as an employee, but in his own affidavit he indicates that he was designated the sole vice-president of the Company by resolution and that he signed thousands of documents for the Company in that capacity. Significantly, the complaint seeks to hold Chalavoutis and Kamran, among other individual defendants, liable for breach of fiduciary duty.

These representations are informal judicial admissions, constituting some evidence of the facts admitted, which may be explained at trial (see Chock Full O'Nuts Corp. v NRP LLC I, 47 AD3d 189, 192 [2007]; Baje Realty Corp. v Cutler, 32 AD3d 307, 310 [2006]; Prince, Richardson on Evidence § 8-219 [Farrell 11th ed]). Parties to a contract are able to alter or waive portions of an agreement by their course of conduct (CT Chems. [U.S.A.] v Vinmar Impex, 81 NY2d 174, 179 [1993]), and the parties appear to have done so here. We reject the argument that plaintiffs' representations do not qualify as informal judicial admissions because they were made "on information and belief" (but see Scolite Intl. Corp. v Vincent J. Smith, Inc., 68 AD2d 417, 421 [1979]). In addition to the allegations made "on information and belief," the individuals actually functioned as officers of the Company and were sued in their individual capacities for breach of fiduciary duty. Under these circumstances and at this stage of the litigation, Chalavoutis and Kamran should not be barred from receiving advancement. It would elevate form over substance to allow plaintiffs to hold defendants out as officers for every corporate purpose except the advancement of expenses. We likewise note that plaintiffs have failed to rebut defendants' claims of ratification.

Defendants also appeal the portion of Supreme Court's order directing that certain mortgage assets (the North Fork mortgages and the missing mortgages) be placed in escrow. The escrow order properly preserved the status quo (360 W. 11th LLC v ACG Credit Co. II, LLC, 46 AD3d 367 [2007]), rather than granting the ultimate relief sought. The equitable relief was appropriate because the assets constituted a specific res

that is "the subject of the action" (*Credit Agricole Indosuez v Rossiyskiy Kredit Bank*, 94 NY2d 541, 548 [2000] [internal quotation marks and citation omitted]).

Since Donovan is not aggrieved by the preliminary injunction, which was granted on consent, the appeal from that order is dismissed (CPLR 5511). Were we to address the merits, we would find the order clear and unambiguous.

Finally, Donovan failed to demonstrate by clear and convincing evidence that there was a danger the property would be "materially injured or destroyed," so as to justify the drastic remedy of appointment of a temporary receiver (CPLR 6401 [a]; *Somerville House Mgt. v American Tel. Syndication Co.*, 100 AD2d 821, 822 [1984]). The claim that Ficus's mismanagement drove PCM, LLC to insolvency is not supported by the record.

Accordingly, the order of Supreme Court, New York County (Bernard J. Fried, J.), entered April 4, 2008, which directed that certain mortgage assets be placed in escrow, should be affirmed, *without costs. The appeal from the order, same court and* Justice, entered May 14, 2007, which converted temporary restraining orders into a preliminary injunction, should be dismissed, without costs. The order, same court and Justice, entered April 24, 2008, which granted defendant Donovan's motion for reimbursement and advancement of legal expenses but denied such relief to defendants Chalavoutis and Kamran, should be modified, on the law, to grant such relief to Chalavoutis and Kamran, and otherwise affirmed, without costs. The order, same court and Justice, entered July 8, 2008, which denied defendant Donovan's motion for appointment of a temporary receiver for plaintiff Private Capital Group LLC, should be affirmed, without costs.

GONZALEZ, MOSKOWITZ, ACOSTA and RENWICK, JJ., concur.

Order, Supreme Court, New York County, entered April 4, 2008, affirmed, without costs. Appeal from order, same court, entered May 14, 2007, dismissed, without costs. Order, same court, entered April 24, 2008, modified, on the law, to grant relief to Chalavoutis and Kamran, and otherwise affirmed, without costs. Order, same court, entered July 8, 2008, affirmed, without costs.