A&F Hamilton Hgts. Cluster, Inc. v Urban Green Mgt., Inc. (2020 NY Slip Op 04440)





A&F Hamilton Hgts. Cluster, Inc. v Urban Green Mgt., Inc.


2020 NY Slip Op 04440


Decided on August 6, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 6, 2020

Renwick, J.P., Kapnick, Oing, Moulton, JJ.


653038/14 11389A 11389

[*1] A & F Hamilton Heights Cluster, Inc., etc., et al., Plaintiffs, James Fendt, etc., Plaintiff-Appellant,
v
Urban Green Management, Inc., et al., Defendants. 
[A Third-Party Action]
WHGA Hamilton Heights Cluster, Inc., et al., Intervenors-Plaintiffs-Respondents,
v
Hamilton Heights Cluster Associates, L.P., et al., Intervenors-Defendants, A & F HHC Equities, LLC, Intervenor-Defendant-Appellant. 
Safeguard Realty Management, Inc., et al., `Nonparty Respondents.


Meyer, Suozzi, English & Klein, P.C., Garden City (Michael J. Antongiovanni of counsel), for appellants.
Offit Kurman P.A., New York (Daniel I. Goldberg of counsel), for respondents.



Orders, Supreme Court, New York County (O. Peter Sherwood, J.), entered November 7, 2018, and May 9, 2019, which granted intervenor plaintiffs' motion for summary judgment declaring that the 1999 limited partnership agreement is the sole valid and enforceable agreement governing the partnership and that the unsigned 2004 agreement never went into effect, and granted defendants' motion for summary judgment dismissing "any and all remaining derivative claims," unanimously affirmed, with costs.
This action involves a dispute over management and ownership of a limited partnership. The principal issue presented by this appeal is whether a limited partnership agreement signed in 1999 (the 1999 agreement) is the governing agreement, or whether an unsigned 2004 amendment to the 1999 limited partnership agreement (the unsigned amendment) is valid and therefore governs the parties' respective rights. Supreme Court found that the 1999 agreement was the operative agreement and that the unsigned amendment was a nullity. Based on that finding it granted summary judgment to movants. We now affirm.
The relevant transactions are convoluted and involve numerous similarly-named entities.
In 1998 West Harlem Group Assistance, Inc. (WHGA), the owner of six residential properties in Harlem, first partnered with James Fendt and Eric Anderson to renovate the properties. The properties, which needed substantial renovation, contained affordable housing units and qualified for funding and assistance from the U.S. Department of Housing and Urban Development (HUD) and New York City's Department of Housing Preservation and Development (HPD).
WHGA, and Fendt and Anderson, created the limited partnership Hamilton Heights Cluster Associates, L.P. (the limited partnership). WHGA formed WHGA Heights Cluster, Inc. (GP-1) to act as the general partner of the limited partnership. For their part, Fendt and Anderson formed a special purpose entity, A & F Hamilton Heights Cluster, Inc. (A & F HHC) to be the limited partner. Fendt and Anderson each owned 50% of A & F HHC. Initially, GP-1 owned 1% of the equity of the partnership and A & F HHC owned 99%. The impetus for this division was that the parties did not expect the partnership to generate any profits for some time, and this division allowed A & F HHC to capture the losses for tax purposes. WHGA, a non-profit, could not take the losses.
The parties entered into the 1999 agreement on October 1 of that year. Pursuant to the 1999 agreement GP-1's equity interest was increased to 67%. A & F HHC was made a general partner and its equity interest was set at 32%. The remaining 1% ownership interest in the limited partnership was assigned to a new limited partner associated with Anderson and Fendt called A & F Equities, LLC (original LP).
In 2001 the limited partnership refinanced with loans from European American Bank (EAB) and with a combination of funding from various governmental agencies.
In 2004 the limited partnership again refinanced with the approval of HPD, replacing its EAB loan with a $2.75 million loan from the New York Community Bank. At the same time, Anderson and Fendt's relationship began to sour and the two began to partially divide their business interests.
Fendt and other parties aligned with him (the Fendt faction, non-movants below) assert that there was a change in the limited partnership's membership, and percentage membership interests, that attended the 2004 refinancing. Parties aligned with WHGA, including Anderson (the WHGA/Anderson faction, movants below)[FN1], dispute this assertion. The Fendt faction asserts that as part of the closing the parties agreed to an amendment of the 1999 agreement, embodied in the unsigned amendment. Several iterations of the amendment, none signed, have surfaced. The Fendt faction relies on the iteration dated December 22, 2004.
According to the unsigned amendment various entities were substituted for the partners set forth in the 1999 agreement. A new entity, West Harlem Hamilton Heights Cluster, Inc. (New GP-1, a WHGA-controlled entity) was named a general partner of the limited partnership. GP-1 was no longer listed as general partner. A & F HHC continued as a general partner. A & F HHC Equities, LLC (New LP) was listed as the limited partner. Original LP, the limited partner of the 1999 agreement, was no longer listed as limited partner. Under the unsigned amendment, New GP-1 was assigned a .051% interest, A & F HHC a .049% interest, and New LP a 99.9% [*2]interest. However, the unsigned amendment provides that capital proceeds are to be distributed 50% to new LP, and 25% each to the general partners. The Fendt faction avers that this arrangement was for tax purposes, and to acknowledge the greater investment in the properties by entities controlled by Fendt and Anderson.
The unsigned amendment thus embodies major changes to the limited partnership: a new ownership structure, the substitution of a new general partner and a new limited partner, and changes in allocations of capital, and income and loss. The new division of capital proceeds contained in the unsigned amendment represents a significant reduction of the proceeds that WHGA (through the general partner controlled by it), and A & F HHC (the other general partner) were due under the 1999 agreement.
The WHGA/Anderson faction asserts that the parties never agreed to the unsigned amendment and points out that in nearly six years of litigation no one has produced an executed version. Fendt points to various facts that give rise to an inference that the parties behaved as if they had agreed to the unsigned amendment. Before Supreme Court, he cited these facts in opposing the WHGA/Anderson faction's motion for summary judgment, arguing that they create triable issues of fact. For example, Donald Notice, an officer of WHGA, signed a partnership resolution and related documents that reflected the above changes to the limited partnership's membership. Additionally, a copy marked "Draft" of the unsigned amendment was found by HPD in its closing binder pertaining to the 2004 refinancing and was produced in discovery. The 1999 agreement was also in the binder. The loan documents list the purported new general and limited partners contained in the 2004 amendment, without mentioning their percentage interests in the limited partnership. The Fendt faction also points to the fact that Anderson, as the tax matters partner, signed off on the limited partnership's tax returns and K-1s, and that in 2004-13 these documents reflect the percentage ownership of the unsigned amendment (albeit with a decimal error and a misnaming of one of the partners).
Notice's and Anderson's responses to these facts are to claim that these documents reflect mistakes made by various professionals who participated in drafting the documents. They also blame their own inattention. However, their foundational defense is that they never agreed, in writing, to an amendment of the 1999 agreement.
The parties' disputes led to litigation in 2014 when Fendt sought to remove the properties' building manager, Urban Green Management, Inc. (Urban Green), owned by Anderson, with another managing agent. Fendt sued derivatively on behalf of the limited partnership, alleging that Anderson and Urban Green had diverted partnership funds.
Fendt relied on the unsigned amendment in bringing this derivative action, which put its validity at issue. The WHGA-controlled entities, GP-1 and New GP-1, moved to intervene and to dismiss the action on the basis that neither Fendt nor New LP had authority to sue on behalf of the limited partnership. Anderson and Urban Green also moved to dismiss and for the appointment of a receiver. In a decision dated July 5, 2015, Supreme Court granted the motion to dismiss in substantial part, finding that plaintiffs had not established their authority to sue. The court noted that the unsigned amendment was not executed, and that Fendt had made contradictory claims regarding Original LP and New LP's authority to cause the limited partnership to bring the action. The Court granted plaintiffs leave to file an amended complaint with A & F HHC as plaintiff. It also granted the WHGA entities' motion to intervene and file a complaint.
GP-1 and New GP-1 thereupon filed an intervenor complaint seeking, inter alia, a declaratory judgment that the unsigned amendment was invalid and that the only enforceable agreement governing the limited partnership was the 1999 agreement. Fendt purportedly caused A & F HHC and New LP to file an answer and assert counterclaims, inter alia, seeking a declaration that the unsigned amendment governed the Limited Partnership. Discovery ensued. On another front, in 2015 Anderson brought a dissolution proceeding under BCL § 1104-a, which led to Anderson buying out Fendt's interest in A & F HHC.
The issue of what agreement controls again came to a head in the summary judgment motions brought by WHGA and Anderson that are the subject of this appeal. As noted above, Supreme Court ruled for the WHGA/Anderson faction, and found that the 1999 agreement was [*3]the operative agreement. The court found that prior decisions of Justices in this action, and in related actions, established the necessity of a signed amendment as "law of the case" and no signed version had surfaced during discovery. Supreme Court also held, inter alia, that Fendt could not bring a double derivative claim on behalf of the limited partnership because A & F HHC is a minority partner under the 1999 agreement. Finally, the court held that New LP could not bring suit, because there was no proof of a written assignment of Original LP's interest to New LP.
DISCUSSION
In its well-reasoned opinion, Supreme Court correctly held that Fendt had no power to bring a double derivative claim on behalf of the limited partnership via A & F HHC, as A & F HHC was only a minority owner of the limited partnership (see Pessin v Chris-Craft Indus., 181 AD2d 66, 72 [1st Dept 1992])[FN2]. It also correctly found that Fendt had failed to show that he could exercise powers on behalf of New LP that are contained in the unsigned amendment, as the non-movants failed to proffer a signed copy of that document.
The principal, and dispositive, question presented on appeal is whether the unsigned amendment is effective, and therefore served to amend the 1999 agreement. That question turns on whether a signed amendment is necessary, or, as appellants argue, whether the unsigned amendment may become operative through the parties' conduct. We must determine if a signed writing was required under the Revised Limited Partnership Act. Surprisingly, this presents an issue of first impression.
The Revised Limited Partnership Act (RLPA) is in many respects a "default statute" that allows limited partnerships to chart their own course of governance, but imposes rules if the partnership does not explicitly opt out of specific provisions. Many substantive provisions in the act are qualified by the phrase "except as may be provided otherwise in the partnership agreement." That phrase appears in RLPA § 121-110(c), which concerns, among other matters, the distributions and allocations of tax losses to partners. That section reads in full:
"The partnership agreement of a limited partnership may be amended from time to time as provided therein; provided, however, that, except as may be provided otherwise in the partnership agreement, without the written consent of each partner adversely affected thereby, no amendment of the partnership agreement shall be made which (i) increases the obligations of any limited partner to make contributions, (ii) alters the allocation for tax purposes of any items of income, gain, loss, deduction or credit, (iii) alters the manner of computing the distributions of any partner, (iv) alters, except as provided in subdivision (a) of section 121-302 of this article, the voting or other rights of any limited partner, (v) allows the obligation of a partner to make a contribution to be compromised by consent of fewer than all partners or (vi) alters the procedures for amendment of the partnership agreement."
RLPA § 121-110(c) (emphasis supplied).
The unsigned amendment purports to alter the allocation of distributions and tax losses to the partners. The 1999 agreement contains no provision that would allow for such changes without a writing memorializing the consent of the adversely affected partners. Therefore, the default requirement of an executed writing applies, as provided in RPLA § 121-110(c). It is undisputed that no party has located, much less authenticated, an executed version of the unsigned amendment. As it has not been signed by any adversely affected partner, the unsigned amendment is of no effect.
Non-movants argue that parties can modify a contract by their conduct. That is true of course as a general matter (see Ficus Invs., Inc. v Private Capital Mgt., LLC, 61 AD3d 1, 11 [1st Dept 2009]). However, the contract in this case is one that is subject to a detailed statutory scheme, and therefore the "modification by conduct" argument requires greater scrutiny. The Fendt faction cites only one case that involved modification of a partnership agreement by [*4]conduct (see Estate of Kingston v Kingston Farms Partnership, 130 AD3d 1464, 1465—66 [4th Dept 2015]). However, that case did not involve a provision, such as RLPA § 121-110(c), that requires changes to specified aspects of the limited partnership to be consented to in writing, unless the parties' agreement provides otherwise.[FN3]
Non-movants argue that the equitable exceptions to the statute of frauds provide support for their argument that an executed writing is unnecessary under the facts of this case. General Obligations Law § 15-301(1) states that any agreement that recites that it cannot be amended orally can only be amended in a writing signed by the party to be charged. The Fendt faction correctly points out that the equitable claims and defenses of waiver, estoppel and partial performance are still available to prove or enforce an oral modification of a contract within the statute of frauds (see 310 S. Broadway Corp. v Barrier Gas Serv., Inc., 224 AD2d 409 [2nd Dept 1996]); Matter of Latham Four Partnership v SSI Med. Servs., 182 AD2d 880 [3rd Dept 1992]); Wilkenfeld v Rowen, 262 AD2d 28 [1st Dept 1999]). However, non-movants cite no case that has applied similar equitable claims and defenses in cases involving limited partnership agreements covered by the RLPA.
Given the detailed statutory scheme governing limited partnership agreements embodied in the RLPA, we find the non-movants' argument by analogy unpersuasive. By design, the RLPA sets forth a clear separation between general and limited partners. This separation is more defined than the division between managers and members in limited liability corporations. With few exceptions, the RLPA provides that a general partner has the liabilities of a partner in a non-limited partnership. In exchange for a more passive position, the limited partners are generally sheltered from personal liability to third parties who transact business with the limited partnership (see generally, Bruce A. Rich, Practice Commentaries, McKinney's Cons. Laws of NY, Book 38, Revised Limited Partnership Act, at 317, 334-336). The RLPA's default requirements of partner consent to substantive changes to a limited partnership agreement helps protect the passive limited partners from actions taken by general partners that might adversely affect the limited partners' interests. That default protection would be undermined if we were to engraft on to the RLPA the equitable exceptions applicable to the Statute of Frauds. Accordingly, we decline to do so.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 6, 2020
CLERK



Footnotes

Footnote 1:The use of the term "WHGA/Anderson faction" is used as shorthand to help clarify where the parties stand on the issues raised in this appeal. WHGA and Anderson assert different versions of some of the facts that underlie this hydra-headed litigation, but these differences do not affect the legal issues in this appeal. Anderson and his company Urban Green Management, Inc., have not submitted a brief. Therefore the usual terms "appellant" and "respondent" do not accurately summarize the status of the parties affected by this appeal. Accordingly, the WHGA/Anderson faction is also referred to herein as "movants" and the Fendt faction is sometimes referred to as "non-movants," which reflects their status in Supreme Court. 

Footnote 2:Movants also correctly pointed out below that Fendt had lost his standing in 2015 to bring a derivative claim on behalf of A & F HHC when Anderson bought out Fendt's share in that entity. 

Footnote 3:In Kingston, the "modification" concerned the partners' annual meeting to value the partnership. The agreement called for that meeting to be in March. However, the parties never met in March, and instead met habitually in December. The court held that a December valuation meeting was binding because the partners had modified the agreement by their conduct.