■ UBS Securities LLC et al., Respondents-Appellants, v Highland Capital Management, L.P., Appellant-Respondent, et al., Defendants. UBS Securities LLC et al., Respondents-Appellants, v Highland Capital Management, L.P., Appellant-Respondent. [927 NYS2d 59]—

In April 2007, plaintiff UBS* agreed to finance and act as placement agent in connection with the issuance of certain collateral debt obligations by defendant Highland Capital Management, L.P. (Highland). Highland, a Texas-based hedge fund, did not complete the issuance, and the agreement expired. At that point Highland owed UBS as much as $86 million under the arrangement, based on the depreciation of assets that UBS had been required to hold, or "warehouse." However, because Highland still desired to issue the collateral debt obligations with UBS's assistance, UBS agreed to restructure the transaction. The new arrangement, formed in March 2008, consisted of two agreements between UBS, on the one hand, and Highland, and certain funds affiliated with Highland, on the other. A third agreement, referred to by the parties as an engagement letter, was entered into by UBS and Highland. The engagement letter provided, inter alia, that UBS would bear no risk in connection with losses in the securities to be held by UBS. It further provided that Highland would hold UBS harmless from any claims against UBS arising out of the breach of the agreements by Highland or its affiliated funds.

The agreements gave UBS the right to make margin calls on the Highland affiliated funds if the market value of the securities it was holding on behalf of those funds declined. During the fall of 2008, UBS made three such margin calls. The affiliated funds provided additional collateral in response to the first two margin calls, but not in response to the third call, made in November 2008. In December 2008, UBS terminated the restructured transaction before Highland could issue the collateral debt obligations, and demanded payment for almost $700 million in losses claimed as a result of the depreciation of the assets it was holding. Highland refused to pay.

In early 2009, UBS commenced an action against Highland and the affiliated funds asserting three causes of action. The first two causes of action alleged breach of contract against the affiliated funds only. The third claim was asserted against Highland, and was based on the indemnification language contained in the engagement letter. Highland asserted counterclaims for breach of contract and unjust enrichment against UBS arising out of the restructured transaction.

Highland moved to dismiss the complaint as against it, on the

---

* There are two affiliated UBS companies named as plaintiffs that are referred to herein collectively as "UBS."

basis that the indemnification provision did not apply to the particular losses claimed by UBS. The court denied the motion, finding that UBS's interpretation of the clause was not unreasonable, and that there was at least a question of fact whether it applied. However, on February 18, 2010, this Court unanimously reversed, holding that "[d]ismissal of plaintiffs' indemnification claim against Highland is warranted, since the agreements between the parties contain no promise on the part of Highland to undertake liability with respect to the investment losses suffered by plaintiffs, or to ensure or guarantee the performance of defendant off-shore funds' obligations to bear the risk of investment losses. Absent facts alleging that Highland otherwise breached the engagement letter, the indemnification provision contained in said letter was not triggered" (70 AD3d 526). The Clerk was directed to enter judgment in favor of Highland dismissing the complaint.

Only two days before this Court issued its ruling, UBS had written a letter to the motion court, as required by the rules of the Commercial Part. It sought permission to move to amend its complaint to assert against Highland, and others, "a variety of new allegations that further support the indemnification and breach of contract claims that UBS already has alleged in the original Complaint." UBS also stated in the letter that "the new causes of action arise out of the same or related circumstances and events as UBS's pending claims."

Knowing that this Court had dismissed the complaint against Highland, the court granted the request, and UBS made its motion.

In support of the motion, UBS submitted an attorney's affirmation that summarized documents produced by Highland the month before. UBS claimed that the documents, primarily minutes of meetings of Highland's board of directors, formed the basis of the proposed new claims. Those documents, it was explained, revealed that Highland disregarded corporate formalities vis-à-vis the affiliated funds, that it knew that its methodology for pricing the assets held by UBS was unreasonable and inaccurate, and that it caused improper asset transfers and payments to the affiliated funds' creditors in the fall of 2008 and in 2009, when those funds were insolvent or nearly insolvent.

UBS also submitted the affidavit of Timothy Leroux, a former employee who was involved in the Highland transaction. According to Leroux, in November 2008, after UBS made the third margin call and Highland's affiliated funds were unable to immediately comply, Highland permitted UBS representatives to

make several due diligence trips to its offices to evaluate the affiliated funds' finances, assets and business practices. Leroux attested:

"Among other things, the information that Highland Capital provided to UBS *in November 2008* revealed the following:

"(a) The Fund Counterparties[ ] did not satisfy their Initial Restructuring Collateral obligation by the Agreements using their own assets;

"(b) CDO Fund had pledged and encumbered a substantial portion of its assets prior to entering the Agreements, and additional assets immediately thereafter;

"(c) While Highland Capital was negotiating the Restructured Transaction, it did not tell UBS that it was planning to encumber more of the Fund Counterparties' assets, including immediately after March 14, 2008;

"(d) Highland Capital assigned unreasonable valuations to the Fund Counterparties' assets;

"(e) Highland Capital was willing to ignore corporate formalities and commingle assets between and among various entities related to Highland Capital and the Fund Counterparties to satisfy debts and liquidity needs; and

"(f) Highland Capital was willing to manage the Fund Counterparties without regard for the corporate form to achieve its goals" (emphasis added).

The proposed amended complaint included the following claims against Highland: (1) fraudulent inducement arising out of, inter alia, the misrepresentation of information and omissions to UBS concerning defendants' financial ability and commingling of assets; (2) breach of the covenant of good faith and fair dealing implied in the agreements underlying the restructured transaction; (3) fraudulent conveyance arising out of the transfer of cash and assets from the affiliated funds, impairing the funds' ability to satisfy their obligations to UBS, including transfers of assets made in March 2009 (after commencement of the original action); and (4) tortious interference with contract based on the allegation that Highland caused the affiliated funds to breach the agreements by fraudulently transferring assets and money.

In opposition, Highland asserted that UBS's complaint against it had been dismissed and could not be amended. Highland further argued that res judicata barred the proposed claims because they arose out of the same transaction or series of transactions as the original action. Highland maintained that the preclusive effect of this Court's decision dismissing the orig-

inal action as against Highland was not diminished by the fact that UBS' claims against the affiliated funds and Highland's counterclaims were still pending. Highland also challenged the sufficiency of the claims and asserted that it could not have tortiously interfered with a contract to which it was a party.

The motion court denied that portion of UBS's motion that sought leave to add new claims against Highland, agreeing with Highland's position that a party cannot amend a pleading that has already been dismissed. However, the court expressly rejected Highland's res judicata argument, stating that "the evidence that UBS needs to prove the new claims is entirely different from the evidence that it needed to prove the contract claim that was dismissed." The court also found that it would be unfair to bar relief on res judicata grounds because, pursuant to the Commercial Part's rules, UBS sought permission to make the motion and, before permission was granted, this Court issued its decision dismissing the original complaint as against Highland. The Court also found it would be unfair to apply res judicata here because the dismissal of the original complaint took place in the context of the same action, to which Highland remained a party, having asserted counterclaims.

The court next found that the claims of fraudulent inducement (as to misrepresentations about the funds' ownership of assets and creditworthiness, but not as to the failure to disclose), fraudulent conveyance and breach of covenant of good faith and fair dealing had been adequately pleaded. However, the court found that UBS had not asserted a claim for tortious interference with contract, because economic justification was a defense and "Highland Capital's alleged acts were evidently taken in its own economic interests."

UBS commenced a new action against Highland, in which it asserted the causes of action it had unsuccessfully proposed to add to the original complaint. That action was consolidated with the original action. Highland moved to dismiss the action, based on the substantive arguments it had made in opposition to the motion to amend. The court granted the motion to the extent of dismissing one of the fraudulent conveyance claims and the tortious interference claim. However, based on the reasoning in its previous order, the court denied the motion with respect to UBS's other claim for fraudulent conveyance, its claim for fraudulent inducement, and its claim for breach of the implied covenant of good faith and fear dealing.

The parties appealed, presenting us with the question whether and to what extent the doctrine of res judicata applies to these circumstances. The doctrine dictates that, "as to the

parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action" (*Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481, 485 [1979]). It used to be the rule that, even if the two actions arose out of an identical course of dealing, the second was not barred by res judicata if "[t]he requisite elements of proof and hence the evidence necessary to sustain recovery var[ied] materially" (*Smith v Kirkpatrick*, 305 NY 66, 72 [1953]). However, the Court of Appeals expressly rejected that method of analysis in *O'Brien v City of Syracuse* (54 NY2d 353 [1981]). There it held that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (54 NY2d at 357). The Court further stated: "[w]hen alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts such as would constitute a single 'factual grouping' (Restatement, Judgments 2d, § 61 [Tent Draft No. 5]), the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions" (*id.* at 357-358). Notably, regarding this point, the Court stated in a footnote that, insofar as *Smith v Kirkpatrick* (305 NY 66) "may be to the contrary, it is overruled" (*id.* at 358 n 1). Whether facts are deemed to constitute a single factual grouping for res judicata purposes "depends on how the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether . . . their treatment as a unit conforms to the parties' expectations or business understanding or usage" (*Smith v Russell Sage Coll.*, 54 NY2d 185, 192-193 [1981] [internal quotation marks and citations omitted]).

Here, to the extent the claims against Highland in the new complaint implicate events alleged to have taken place before the filing of the original complaint, res judicata applies. That is because UBS's claims against Highland in the original action and in this action all arise out of the restructured warehousing transaction. While the claim against Highland in the original action was based on Highland's alleged obligation to indemnify UBS for actions taken by the affiliated funds, and the claims against Highland in the second action arose out of Highland's alleged manipulation of those funds, they form a single factual grouping. Both are related to the same business deal and to the diminution in the value of the securities placed with UBS as a result of that deal. Thus, the claims form a convenient trial

unit. Moreover, it can hardly be said that the claims in the two actions are so unrelated that reasonable business people, not to mention the parties themselves, would have expected them to be tried separately (see Smith v Russell Sage Coll., 54 NY2d at 192-193). Also, we note that, when seeking permission to amend the complaint, UBS itself asserted that "the new causes of action arise out of the same or related circumstances and events as UBS's pending claims."

Further, the Court of Appeals' holding in Xiao Yang Chen v Fischer (6 NY3d 94 [2005]) does not support UBS's position. Nor does it represent a shift in res judicata jurisprudence, as UBS argues. The circumstances of this case bear no resemblance to those in Xiao Yang Chen, which involved a woman who, in a previously filed separate action, was granted a divorce on the ground of cruel and inhuman treatment. In the divorce action, the plaintiff supported her cruel and inhuman treatment claim with an allegation that her husband had slapped her, causing injury. While the divorce action was pending, the plaintiff commenced a separate personal injury action seeking damages for the intentional infliction of emotional distress and injuries arising out of the alleged assault. In finding that res judicata did not bar the personal injury action, the Court of Appeals noted that the two actions sought different types of relief and did not constitute a convenient trial unit. The Court of Appeals also noted other significant distinctions, such as the facts that divorce actions are typically decided by a judge and that attorneys in personal injury actions may be compensated by a contingency fee, and the policy consideration of expediting divorce proceedings. None of those considerations applies here, where the action seeks money damages arising only in connection with a commercial transaction.

While we have concluded that res judicata bars the claims in this action, we still must address UBS's assertion that it would be fundamentally unfair to apply res judicata under the circumstances of this case. UBS bases this argument primarily on the contention that it would have moved to amend the complaint in the original action while that action was still in existence (i.e., before this Court dismissed it), but for the necessity that it comply with the Commercial Part rules requiring that it first seek permission in a letter. However, this argument fails because, even had they made such a motion, the ultimate result would have been the same. As evidenced by the affidavit of its former employee, UBS was aware of the facts that support the claims in this action as long ago as November 2008. That was before UBS filed the original action.

Indeed, the evidence that the former employee admits had been gathered by UBS at that time supports all the claims asserted against Highland in this action. That UBS received additional evidence in the document production that Highland made shortly before UBS sought to amend its complaint is irrelevant. The proper inquiry for res judicata purposes is when UBS could have *raised* a cause of action, not when it had enough evidence to prove the claim at trial (*see Castellano v City of New York*, 251 AD2d 194, 195 [1998], *lv denied* 92 NY2d 817 [1998], *cert denied* 526 US 1131 [1999]). In this regard, we note that, based on what it admits it knew in November 2008, UBS could have pleaded its fraud claim with the requisite particularity at that time, since the facts available would have permitted a "reasonable inference of the alleged conduct" (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 492 [2008]). Because UBS could have asserted the instant claims in the original complaint or moved to amend well before that complaint was dismissed by this Court, we are not persuaded that the Rules of the Commercial Part affected the eventual result. Nevertheless, to the extent that the third and fourth causes of action, alleging breach of the covenant of good faith and fair dealing and fraudulent conveyance, respectively, rely on conduct alleged to have occurred after the commencement of the prior action, such claims should be allowed.

Nor do we share the motion court's concern that it is unfair to apply res judicata where Highland remains a party to the action by dint of its counterclaims. It would likewise be unjust to hold that a defendant that chooses to assert a counterclaim forfeits its right to assert the defense of res judicata with respect to the main claims. Indeed, to so hold would deal a blow to judicial economy since counterclaims are not compulsory in New York (*67-25 Dartmouth St. Corp. v Syllman*, 29 AD3d 888, 889 [2006]), and defendants would merely assert their own claims in separate actions to avoid the application of res judicata.

Finally, to the extent the fifth cause of action, alleging tortious interference with contractual relations, is based on events that occurred after the original complaint was filed, it was properly dismissed, since Highland was a party to the contracts with which it is alleged to have interfered. While some courts have held that a party to a multilateral agreement can be found liable for tortious interference with the agreement (*see e.g. Rosecliff, Inc. v C3, Inc.*, 1995 WL 276156, *3, 1995 US Dist LEXIS 6281, *9 [SD NY 1995]), that has generally been where the alleged tortfeasor has rights and duties that are separate

from those of the breaching party (*see Aljassim v S.S. S. Star*, 323 F Supp 918, 925 [SD NY 1971]). Here, the complaint is thoroughly suffused with allegations that Highland was essentially the alter ego of the parties it induced to breach the agreements. Under such circumstances, Highland cannot be considered a "stranger" to the contractual relationship between UBS and the affiliated funds, and there can be no claim for tortious interference with contract (*see Koret, Inc. v Christian Dior, S.A.*, 161 AD2d 156, 157 [1990], *lv denied* 76 NY2d 714 [1990]). Concur—Mazzarelli, J.P., Sweeny, Renwick, Richter and Manzanet-Daniels, JJ.