OPINION OF THE COURT
Moskowitz, J.
This matter arises out of the collapse of the residential housing market following the global financial crisis of 2007 and 2008. Plaintiff Syncora Guarantee Inc. (Syncora), formerly known as XL Capital Assurance, Inc., is a monoline insurance company that provides insurance for structured finance transactions, including residential mortgage backed securities (RMBS). In March 2007, Syncora agreed to insure an RMBS transaction known as the GreenPoint Mortgage Funding Trust 2007-HE1 (the transaction).[1] In exchange for monthly premiums, Syncora guaranteed principal and interest payments in the event the underlying mortgage loans failed to perform. EMC Mortgage Corporation (EMC)[2] served as sponsor of the transaction, while Bear, Stearns & Co. Inc. (Bear Stearns) served as manager and underwriter.[3] The transaction was backed by nearly 10,000 home equity lines of credit (HELOCs). EMC purchased the HELOCs from GreenPoint Mortgage, Inc. (GreenPoint) and sold them into a trust. In turn, the trust issued securities to investors.
To satisfy its agreement to insure the transaction, Syncora issued an insurance and indemnity agreement to EMC (the I&I *90 agreement) under which Syncora agreed to issue a financial guaranty policy (the policy). The I&I agreement contains a series of EMC’s broad warranties as a condition to, and as consideration for, Syncora’s issuance of the policy. Those warranties refer to, among other things, the quality of the loan collateral as well as EMC’s and GreenPoint’s underwriting, due diligence and quality control policies. The I&I agreement also contains a provision requiring EMC to promptly disclose each loan that failed to conform to EMC’s warranties, and to either cure, repurchase, or provide adequate substitutes for each loan (the repurchase provision).
After the transaction closed in March 2007, the underlying mortgage loans began defaulting, following the collapse of the residential housing market. The defaults required Syncora to take write-offs and pay claims under the policy.
When the transaction began to underperform, Syncora hired a third-party consultant to review a large subset of the loan pool. The review allegedly revealed that more than 85% of a randomly selected sample of loans had failed to conform to EMC’s contractual warranties — for example, by violating EMC’s own underwriting guidelines and mortgage-lending practices. According to Syncora, the most prevalent of the breaches involved either Bear Stearns’s misrepresentations about the borrowers’ ability and willingness to pay or GreenPoint’s failure to adhere to its own underwriting guidelines when originating the loans. Syncora alleges that it has so far invoked its rights under the repurchase provision for 1,315 breaching loans, but that EMC has refused to repurchase all but 32 of the loans. Further, Syncora alleges, it has so far paid out over $320 million in unreimbursed insurance claims.
In March 2009, Syncora filed a breach of contract action against EMC in federal court.[4] In that action, captioned Syncora Guar. Inc. v EMC Mtge. Corp. (US Dist Ct, SD NY, 09 Civ 3106 [PAC], Grotty, J., 2009) (the federal action), Syncora asserted causes of action for, among other things, breach of the repurchase provision and material breach of the I&I agreement. When Syncora commenced the federal action, a financial guarantor, Ambac Assurance Corp. (Ambac), was already litigating similar *91 contract claims against EMC (Ambac Assur. Corp. v EMC Mtge. Corp., US Dist Ct, SD NY, 08 Civ 9464, Berman, J., 2008) (the Ambac action). The same counsel represents both Ambac and Syncora in their litigations against EMC, Bear Stearns, and JP Morgan.
In November 2010, Syncora moved to amend its federal complaint, asserting that discovery had revealed the scope of the intentional misrepresentations Bear Stearns had made before the transaction. In support of its motion, Syncora stated that discovery had uncovered a “fraudulent scheme developed and executed by [Bear Stearns] and its affiliate EMC” and that EMC was “acting under the control of [Bear Stearns]” when it purchased the HELOCs, sold them into the trust, and contracted with Syncora to provide the policy that protected investors. Syncora also claimed to have discovered that EMC was initially prepared to honor its repurchase obligations under the I&I agreement but that JP Morgan abruptly reversed those decisions in the summer of 2008, shortly after it acquired Bear Stearns.
According to Syncora, once it had a sufficient factual basis to satisfy the heightened pleading standard for fraud, it informed the court that it intended to amend its complaint, and moved to add fraudulent inducement and securities fraud claims against both Bear Stearns and EMC and a tortious interference claim against Bear Stearns. Similarly, in the Ambac action, Ambac moved to amend its complaint to add the same claims.
Judge Richard M. Berman ruled first in the Ambac action, finding that Ambac had a good faith basis to amend its complaint to add a fraudulent inducement claim against Bear Stearns and EMC. The court ruled, however, that Ambac’s federal securities claims were futile for lack of standing, and that absent the federal claims, the court did not have subject matter jurisdiction over non-diverse Bear Stearns because Ambac is a Wisconsin corporation with its principal place of business in New York. Thus, the court granted Ambac’s motion to add the fraudulent inducement claims against Bear Stearns and EMC but then immediately dismissed the case for lack of jurisdiction. Ambac refiled its action in state court, where it is currently pending (Ambac Assur. Corp. v EMC Mtge. Corp., Sup Ct, NY County, Ramos, J., index No. 650421/2011).
In March 2011, Judge Paul Crotty denied Syncora’s motion to amend the complaint as untimely under the Federal Rules of Civil Procedure. The court ruled that Syncora had failed to *92 demonstrate the good cause necessary to permit its late amendment or justify its delay of over a year in doing so. The court noted that the “intricacies of the fraud” were not necessary to bring the claim and that Syncora was on notice of Bear Stearns’s alleged fraud “long before documents were produced.” Thus, the court concluded, in filing the initial complaint, “Syncora made a conscious choice not to move Bear Stearns as a party defendant because to do so would prevent diversity jurisdiction.” The court also found that the proposed securities claims were futile for lack of standing because Syncora was “neither a buyer nor a seller of the securities at issue.” Finally, the court noted that, had it allowed Syncora to add its fraud claims against non-diverse Bear Stearns, the “most prudent” course would have been to dismiss the case for loss of diversity jurisdiction.
Syncora then filed this state action, asserting the same claims that Judge Crotty had rejected as untimely in the federal action. Specifically, the amended complaint asserts fraudulent inducement and tortious interference claims against JP Morgan, the former Bear Stearns. As in its federal pleadings, Syncora alleges that Bear Stearns and EMC acted “in concert” to induce its participation in the transaction. For example, the amended complaint alleges that Bear Stearns “oversaw every link in the mortgage-loan securitization chain” through its “well-engineered network of affiliates.” The complaint further alleges that Bear Stearns executives “controlled the volume of loans to acquire from GreenPoint” and “made decisions and representations regarding the due diligence, quality control, and repurchase protocols” related to the transaction.
Further, as it alleged in its federal pleadings, Syncora alleges in the state complaint that to induce it to insure the transaction, Bear Stearns made extensive representations concerning, among other things, the quality of the underlying loans and Bear Stearns’s internal policies and procedures for ensuring the quality of those loans. Syncora also asserts in the state complaint, as in the federal complaint, that it relied on the truth of Bear Stearns’s representations when analyzing the risks associated with the transaction. Defendant moved for summary judgment dismissing the complaint as barred by res judicata or for dismissal under CPLR 3211 (a) (4).
The motion court erred in denying defendant’s motion for summary judgment because, in light of Judge Crotty’s decision, this action is barred by the doctrine of res judicata. The doc *93 trine dictates, “as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action” (UBS Sec. LLC v Highland Capital Mgt., L.P., 86 AD3d 469, 473-474 [1st Dept 2011] [internal quotation marks omitted]).
Here, we find that the motion court erred in finding that no privity existed between JP Morgan and EMC. To be sure, the motion court applied a strict standard in evaluating the issue of privity, finding, among other things, that JP Morgan and EMC had no “preexisting substantive legal relationship” and therefore, that no privity existed between them (2012 NY Slip Op 33215[U], *19 [2012] [internal quotation marks omitted]). That rigid a test is not, however, appropriate in evaluating questions of privity. Indeed, courts of this state have found that the concept of privity “requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation” (Evergreen Bank v Dashnaw, 246 AD2d 814, 816 [3d Dept 1998]; see also D’Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990] [noting that privity “is an amorphous concept not easy of application”]). This conclusion holds particularly true in this action, as Syncora not only seeks the same relief in two actions from close corporate affiliates, but has made extensive allegations that the two defendants acted in concert in the same alleged scheme and should be treated as the same entity for the purpose of maintaining suit (see Wilson v Limited Brands, Inc., 2009 WL 1069165, *3 n 4, 2009 US Dist LEXIS 37576, *9 n 4 [SD NY Apr. 17, 2009]).
Syncora contends that corporate affiliation, “absent more,” is insufficient to establish privity. This statement, standing by itself, is true. But Syncora’s pleadings suggest far more than mere corporate affiliation, given the extensive allegations, in multiple pleadings and filings in state and federal court, that Bear Stearns and EMC acted “in concert and as a single entity without regard to corporate formality” to perpetrate the alleged fraud. Thus, Syncora’s own allegations support a finding of privity for res judicata purposes (see UBS Sec. LLC v Highland Capital Mgt., L.P., 93 AD3d 489, 490 [1st Dept 2012] [finding no need to remand for a determination regarding whether defendants are in privity where complaint seeks to hold one defendant liable as the alter ego of another defendant]).
*94 Syncora tries to downplay its own allegations by arguing that it does not “seek to hold Bear Stearns liable ... as EMC’s alter ego” and by pointing to JP Morgan’s denial of these allegations as creating an issue of fact. However, Syncora cannot defeat the motion by contradicting the allegations in its own pleadings. On the contrary, it is Syncora’s allegations, not Bear Stearns’s responses to them, that control the outcome of this motion (see Rojas v Roman Catholic Diocese of Rochester, 783 F Supp 2d 381, 407 [WD NY 2010] [“(A) party cannot attempt to defeat a summary judgment motion by contradicting factual allegations in (its) complaint”], affd 660 F3d 98 [2d Cir 2011], cert denied 565 US —, 132 S Ct 1744 [2012]; Melwani v Jain, 2004 WL 936814, *8 n 10, 2004 US Dist LEXIS 7590, *27 n 10 [SD NY Apr. 29, 2004] [defendant’s assertion that corporate affiliates are “separate entities” and “that the corporate boundaries between them should not be disregarded” does “not preclude a finding of privity between the two (parties) for res judicata purposes”]).
Syncora further contends that, even upon a finding of privity between JP Morgan and EMC, the “jurisdictional competency” exception to res judicata applies because it could not have litigated its claims against JP Morgan and Bear Stearns in the federal action, because of the federal court’s lack of subject matter jurisdiction over non-diverse Bear Stearns and JP Morgan.
However, this exception does not apply. In Humphrey v Tharaldson Enters., Inc. (95 F3d 624 [7th Cir 1996]), the Seventh Circuit addressed this issue, finding:
“[the] [principles [of federal common law] require plaintiffs to assert their claims initially in the forum with the broadest possible jurisdiction .... If a plaintiff has a collection of claims that arise from one set of events and has an unconstrained choice between a forum of limited jurisdiction and a forum of broad jurisdiction, a decision to proceed in the more limited forum precludes [it] from bringing the unlitigated claims in a subsequent proceeding” (id. at 626, quoting Waid v Merrill Area Pub. Schools, 91 F3d 857, 864-865 [7th Cir 1996], citing Restatement [Second] of Judgments §§ 24, 25, Comment e).
The court continued that “[o]nly where a plaintiff has some claims that can only be brought in a limited forum may he ‘proceed in the forum of limited and exclusive jurisdiction *95 without losing the opportunity to later litigate the claims not within that forum’s jurisdictional competency’ ” (id., quoting Waid, 91 F3d at 865, citing Restatement [Second] of Judgments § 26, Comment c).
We find the Seventh Circuit’s reasoning to be persuasive in this matter. Rather than choosing to file its initial action in state court, where there would be no jurisdictional impediment to adding Bear Stearns as a party, Syncora chose to bring state contract claims against EMC so it could proceed in a federal forum on the basis of diversity jurisdiction. Thus, as Judge Crotty aptly concluded in the federal action, Syncora made a “conscious choice” not to include Bear Stearns as a party defendant (see Somerville House Mgt., Ltd. v Arts & Entertainment Tel. Network, 1993 WL 138736, *2-3, 1993 US Dist LEXIS 5534, *8-10 [SD NY Apr. 28, 1993]).
Likewise, Syncora chose to move for leave to amend its complaint in federal court, seeking to add federal securities law claims against Bear Stearns. Had the federal court allowed the new claims, those claims would have conferred federal jurisdiction over all of Syncora’s claims against Bear Stearns. Having made its own strategic decision, Syncora cannot now be heard to complain that it is being denied its day in court. On the contrary, because it chose to proceed initially in federal court, Syncora is bound by the effects of the path it charted (see Falk v State Bar of Mich., 631 F Supp 1515, 1521 [WD Mich 1986] [“Plaintiff should not be allowed to hale defendant into a second court simply because the first court in which he chose to sue defendant could not consider all the various theories of recovery arising from his single cause of action”], affd 815 F2d 77 [6th Cir 1987]).
The motion court further erred in denying defendant’s motion for dismissal of the action, based on CPLR 3211 (a) (4), in favor of the earlier-filed federal action. Indeed, New York courts generally follow the so-called “first-in-time” rule, which provides “the court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of the rules of comity to interfere” (see White Light Prods. v On The Scene Prods., 231 AD2d 90, 96 [1st Dept 1997], quoting City Trade & Indus., Ltd. v New Cent. Jute Mills Co., 25 NY2d 49, 58 [1969], quoting H. M. Hamilton & Co. v American Home Assur. Co., 21 AD2d 500, 506 [1st Dept 1964]).
Syncora argues that the absence of one common defendant across the two actions is inconsistent with application of the *96 first-in-time rule (citing Morgulas v Yudell Realty, 161 AD2d 211 [1st Dept 1990]). This argument is not persuasive. When considering whether to dismiss a later filed action, courts will determine whether there is a “sufficient identity” of parties (White Light Prods., 231 AD2d at 93-94). Indeed, substantial, not complete, identity of parties is all that is required to invoke CPLR 3211 (a) (4) (id. at 94). Thus, where, as here, a plaintiff seeks the same damages for the same alleged injuries relating to the same transaction from close corporate affiliates, a court may properly make a finding that parties have “substantially similar” identities for purposes of the first-in-time rule.
Syncora further argues that because the federal action consisted of breach of contract claims while this action consists of fraudulent inducement and tortious interference claims, the later filed case cannot be dismissed because the two cases do not address the same legal issues. This argument also lacks merit. To be sure, in the two actions, Syncora asserts different legal theories, but it seeks to recover for the same alleged harm based on the same underlying events. It is not necessary that the “precise legal theories presented in the first action also be presented in the second action” (Cherico, Cherico & Assoc. v Midollo, 67 AD3d 622, 622 [2d Dept 2009]; see Matter of Schaller v Vacco, 241 AD2d 663, 663 [3d Dept 1997] [dismissing action as duplicative “although the precise legal theories” presented in the case differed from those presented in the first filed action]). Rather, “[t]he critical element is that both suits arise out of the same subject matter or series of alleged wrongs” (Cherico, 67 AD3d at 622 [internal quotation marks omitted]; see also UBS Sec. LLC, 86 AD3d at 474 [finding in a res judicata analysis that while the claim against defendant in the original action arose out of its alleged obligation to indemnify plaintiff for actions by plaintiff’s affiliates, and claims against defendant in the second action arose out of its alleged manipulation of those affiliates, the two claims formed a single factual grouping, as both were related to the same business deal and raised the same issue]).
Here, both actions arise out of the same transaction, involve the same allegations concerning Bear Stearns’s and EMC’s concerted actions in the “mortgage-loan securitization chain” and seek the same recovery for the same alleged injuries — that is, recovery of “claims payments made and to be made” under the policy. Thus, dismissal is also warranted under CPLR 3211 (a) (4).
*97 Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered May 4, 2012, which denied defendant’s motion for summary judgment dismissing the complaint as barred by the principles of res judicata or for dismissal under CPLR 3211 (a) (4) on the ground that there is another action pending, should be reversed, on the law, without costs, and defendant’s motion for summary judgment granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.
Friedman, J.E, Sweeny, Moskowitz and Feinman, JJ., concur.
Order, Supreme Court, New York County, entered May 4, 2012, reversed, on the law, without costs, and defendant’s motion for summary judgment granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

. RMBS are securitization trusts that hold mortgage loans. Investors in the securities receive a return from the loans’ principal and interest payments. The transaction is also a securitization trust.

. In March 2011, EMC Mortgage Corporation became EMC Mortgage LLC.

. At the time of the transaction, EMC and Bear Stearns were wholly-owned subsidiaries of The Bear Stearns Companies, Inc. In May 2008, JPMorgan Chase & Co. acquired The Bear Stearns Companies, Inc., including its subsidiaries EMC and Bear Stearns. The JPMorgan-owned entity then merged into Bear Stearns and later became known as defendant J.E Morgan Securities LLC (JP Morgan). Thus, EMC and JP Morgan are sister affiliates.

. Diversity jurisdiction enabled Syncora to bring the action in federal court, because it is a New York corporation with its principal place of business in New York while EMC is a Delaware corporation with its principal place of business in Texas. Also relevant is that defendant JP Morgan is a Delaware corporation with its principal place of business in New York.