OPINION OF THE COURT
Marcy S. Friedman, J.
These actions arise out of a failed transaction for securitization of collateralized loan obligations. Plaintiffs UBS Securities LLC and UBS AG, London branch (collectively UBS) sue defendants Highland Capital Management, L.P (Highland Capital) and various affiliated entities for nearly $700 million in damages that UBS allegedly sustained as a result of diminution in the market value of investments held by UBS in a collateralized debt facility (the warehouse facility). UBS’ claims fall into two *582 broad categories: breach of contract and fraudulent inducement against certain of the Highland defendants, and fraudulent conveyance against all of the Highland defendants.
More particularly, Highland Special Opportunities Holding Company (SOHC) and Highland CDO Opportunity Master Fund, L.E (CDO Fund) (collectively the Fund counterparties) were parties, along with Highland Capital, to agreements, made with UBS in 2007, which established the warehouse facility. The agreements contemplated that UBS would hold assets in the warehouse facility pending securitization of collateralized loan obligations (CLOs). The original transaction expired by its terms in August 2007, without a securitization occurring. UBS alleges that, at the time of the expiration, the assets in the warehouse facility had lost in excess of $86 million in value. The same parties subsequently entered into a restructured transaction, by agreements dated March 14, 2008. The 2008 agreements authorized UBS to make margin calls requiring the posting of additional collateral by the Fund counterparties in the event of decline in value below a certain amount of the assets in the warehouse facility. The Fund counterparties satisfied UBS’ first and second margin calls, but failed to satisfy the third. UBS terminated the restructured transaction, and this litigation followed.
The procedural history of the litigation is extensive, and has been discussed at length in prior decisions of the Appellate Division, familiarity with which is presumed. The first action (2009 action) was commenced by filing on February 24, 2009 against Highland Capital, SOHC and CDO Fund. The action asserted a claim against Highland Capital for indemnification which was dismissed on an appeal from an order of this court (Fried, J.), entered on October 8, 2009. (UBS Sec. LLC v Highland Capital Mgt, L.E, 70 AD3d 526 [2010].)
UBS subsequently served a second action (2010 action) against Highland Capital, alleging causes of action, among others, for fraudulent inducement, breach of the covenant of good faith and fair dealing, fraudulent conveyance, and tortious interference with contractual relations. By order entered on August 9, 2010, this court (Fried, J.) denied the motion to dismiss except as to the tortious interference claim. The Appellate Division upheld the dismissal of the tortious interference claim, and modified the determination to the extent of dismissing the fraudulent inducement claim as against Highland Capital, and dismissing those portions of the breach of covenant and fraudu *583 lent conveyance claims “that rely on conduct predating the commencement of the prior action.” (UBS Sec. LLC v Highland Capital Mgt., L.P., 86 AD3d 469, 469 [July 2011].) In holding that the dismissed portions of the claims were barred by res judicata, the Court reasoned:
“Here, to the extent the claims against Highland [Capital] in the new complaint implicate events alleged to have taken place before the filing of the original complaint, res judicata applies. That is because UBS’s claims against Highland [Capital] in the original action and in this action all arise out of the restructured warehousing transaction.” (Id. at 474.)
A motion to dismiss the first amended complaint in the 2009 action was subsequently brought by defendants Highland Financial Partners, L.P. (Highland Financial), Highland Credit Opportunities CDO, L.P., and Strand Advisors, Inc. The determination of this court (Fried, J.), entered on March 3, 2011, was appealed to the Appellate Division, which modified the determination “to the extent of granting the motion with respect to claims arising before February 2009.” (UBS Sec. LLC v Highland Capital Mgt., L.P., 93 AD3d 489, 490 [Mar. 13, 2012].) The Court reasoned that its July 2011 decision “warrants dismissal of a portion of plaintiffs claims in this action due to res judicata since defendants are in privity with the defendant [Highland Capital] in the other action.” (Id.) The Court further noted that the complaint seeks to hold Highland Financial liable as the alter ego of defendant SOHC, and held that the alter ego claim was sufficiently stated based on the allegations, among others, that “SOHC’s sole board member is on Highland Financial’s board, Highland Financial did not distinguish between its debts and obligations and those of SOHC, and that it operated SOHC and Highland Financial as a single economic entity.” (Id.) The Court also held that the fraudulent conveyance claim was pleaded with sufficient detail. (Id.)
This court has before it two motions to dismiss. Defendants Highland Credit Strategies Master Fund, L.E (Credit Strategies) and Highland Crusader Offshore Partners, L.E (Crusader) move to dismiss the second amended complaint in the 2009 action. Defendant Highland Crusader Holding Corporation (HoldCo.) moves to dismiss a third action (2011 action) in which it is the sole defendant. By separate motion, UBS seeks a preliminary injunction enjoining Credit Strategies and Crusader *584 from transferring or disposing of certain property. The motions are consolidated for disposition.[1]
The second amended complaint in the 2009 action does not materially change the allegations of the first amended complaint. The complaints plead substantially similar allegations against Credit Strategies and Crusader. The material allegations, which involve domination of these and other Highland affiliates by Highland Capital and Highland Financial, include that Highland Financial is SOHC’s alter ego, and that Highland Capital and Highland Financial operated Highland Financial and its subsidiaries, including SOHC, as a single economic entity. (Second amended complaint § 25.) As also alleged, almost immediately after the restructured transaction was entered into, Highland Capital and the Fund counterparties knowingly began to dissipate the Fund counterparties’ assets and to make it impossible for the Fund counterparties to repay UBS what they owed. For example, on March 26, 2008, Highland Capital caused SOHC assets to be encumbered by entering into a transaction with Barclays Bank. At about the same time, it caused CDO Fund to transfer $100 million cash out of CDO Fund. (Id. §§ 69-71.)
As the complaints further allege, pursuant to note offerings made in September and October 2008 (the fall 2008 note offerings), Highland Financial acquired over $371 million in risky CLO assets and life settlement insurance contracts from Credit Strategies, Crusader, and Highland Credit Opportunities CDO, L.P. (collectively the affiliated transferee defendants) in exchange for senior secured notes. (Id. § 83.) Highland Financial was also required to transfer a security interest to the affiliated transferee defendants in shares of two other wholly owned subsidiaries into which Highland Financial transferred the assets it had received from the affiliated transferee defendants. (Id.)
“The granting of this security interest and related asset transfers constituted fraudulent conveyances, which made payment by the Fund Counterparties and Highland Financial of their obligations to UBS impossible and defrauded UBS. At the time of the September 2008 Note Offering, Highland Financial, as SOHC’s alter ego, owed UBS hundreds of millions of dollars that it could not pay.” (Id. § 84.)
*585 After the fall 2008 note offerings, Highland Capital caused Highland Financial and SOHC to use the assets that they acquired to pay down a substantial portion of SOHC’s debt to Barclays to the detriment of UBS. These payments to Barclays were made at a time when SOHC was insolvent or within the zone of insolvency, and constituted fraudulent conveyances. (Id. §§ 86-88.) Other payments by CDO Fund to satisfy obligations to Citibank (Citi), made at a time when CDO Fund was insolvent, also constituted fraudulent conveyances. (Id. § 89.)
Finally, in March 2009, Highland Capital allegedly caused Highland Financial to transfer virtually all of its assets to Highland Capital and back to the affiliated transferee defendants. (Id. § 111.) This transfer, to which UBS refers as the “March 2009 Fraudulent Conveyance” (id.), interfered with the Fund counterparties’ ability to meet their obligations to UBS under the warehouse agreements. (Id. § 114.) As further elaborated by UBS on this motion to dismiss, in the alleged March 2009 fraudulent conveyance, Highland Financial transferred $239 million of assets to Credit Strategies, Crusader, and other Highland affiliates, “purportedly as a cancellation or ‘unwind’ of the Fall 2008 Note Offering.” (UBS mem in opp to Credit Strategies/Crusader motion to dismiss at 5.) On its motion for a preliminary injunction, UBS argues more extensively that the fall 2008 transaction, although styled as a “notes offering,” was in fact not a loan by Credit Strategies and Crusader to Highland Financial, hut a thinly disguised equity investment by those entities in Highland Financial. (UBS mem in support of order to show cause under Debtor and Creditor Law § 279 at 15.)
The first and second amended complaints include a first cause of action for fraud against the Fund counterparties, based on alleged misrepresentations to UBS about their creditworthiness and financial ability to satisfy their obligations under the agreements for the restructured transaction (second amended complaint §§ 115-127), and third and fourth causes of action against the Fund counterparties for breach of contract under the warehouse agreements. (Id. §§ 145-157.)
The complaints also plead a fifth cause of action against all defendants for fraudulent conveyances. This cause of action pleads that Highland Capital caused the Fund counterparties to transfer cash and assets out of the Fund counterparties between March 14 and December 3, 2008, thereby impairing the ability of the Fund counterparties to satisfy their obligations to *586 UBS. (Id. § 168.) The complaints allege, as an “example” of the fraudulent conveyances involving SOHC, that SOHC made payments to Barclays in the fall of 2008. (Id. § 170.) As to the conveyances involving CDO Fund, the complaints allege that this Fund “transferred assets to an intermediary who subsequently transferred the assets to an insider affiliate” (id. § 171), and that in May 2008, Highland Capital caused CDO Fund to transfer approximately $100 million out of CDO Fund, which was distributed to Highland Capital and its affiliates. (Id. § 173.) Highland Capital is also alleged to have caused CDO Fund to participate in the fall 2008 note offerings, to transfer assets to Highland Financial in exchange for the notes, and to transfer the notes it received in this offering to Citi. (Id. § 174.)
The fifth cause of action is also based on the alleged March 2009 fraudulent conveyance. The complaints plead, in this regard, that Highland Capital caused Highland Financial to become indebted to the affiliated transferee defendants by entering into the fall 2008 note offerings, and that in March 2009, Highland Capital caused Highland Financial, SOHC’s alter ego, to engage in the March 2009 fraudulent conveyance by transferring Highland Financial’s assets to the affiliated transferee defendants, Highland Capital, and a CDO Fund creditor, Citi. {Id. §§ 177-178, 174.)
Finally, the complaints plead an eighth cause of action for alter ego liability against Highland Financial, alleging, among other things, that Highland Financial completely dominated SOHC’s day-to-day operations; operated Highland Financial and its subsidiaries, including SOHC, as a single entity; regularly commingled assets; and operated SOHC without regard to corporate formalities. {Id. § 196.)
Credit Strategies/Crusader Motion
Credit Strategies and Crusader, which were not parties to the prior appeals, make this motion to dismiss the second amended complaint in order to “conform the effect of the Appellate Divisions’s rulings” to the allegations against them. (Credit Strategies/Crusader mem in support at 13.) They argue that they are in privity with Highland Capital for res judicata purposes, and that all claims arising before the filing of the original complaint on February 24, 2009 must be dismissed. Significantly, also, they claim that UBS is barred by the July 2011 and March 13, 2012 decisions from relying on any conduct or evidence that occurred or existed prior to February 24, 2009 *587 to prove their post-February 24, 2009 alter ego or fraudulent conveyance claims. (Id. at 15-20.) Thus, they argue that evidence essential to prove the alter ego claim — for example, evidence that Highland Capital ignored corporate formalities and commingled assets of SOHC and Highland Financial — is barred because this evidence existed, or the conduct occurred, prior to February 2009. They conclude that UBS will be unable to prove its March 2009 fraudulent conveyance claim against Credit Strategies and Crusader, because it will be unable to prove the alter ego claim that is the necessary predicate for the fraudulent conveyance claim. (Id. at 17.) Put another way, Credit Strategies and SOHC contend that there is no post-February 24, 2009 evidence of Highland Financial’s alter ego status.
These contentions are without merit. The Appellate Division decisions preclude any fraudulent conveyance claims arising before February 24, 2009. They therefore preclude UBS from recovering for any alleged fraudulent conveyances made before February 24, 2009. For example, UBS is barred from recovering for alleged fraudulent conveyances at the time of the fall 2008 note offerings, including the transfers from SOHC to Barclays in the fall of 2008, or for the transfers from CDO Fund to Citi in May 2008. But while recovery for the pre-February 24, 2009 transfers is prohibited, proof of the transfers, or other conduct involving the operation of the Highland entities, is not prohibited to the extent necessary to prove UBS’ claims for post-February 24, 2009 fraudulent conveyances, which are maintainable under the Appellate Division decisions. The res judicata doctrine does not preclude recovery for injuries that could not have been recovered in a prior action, even where certain of the acts that led to the injuries had occurred as of the time of the prior action. (See generally Pawling Lake Prop. Owners Assn., Inc. v Greiner, 72 AD3d 665, 668 [2d Dept 2010] [losses of membership dues arising subsequent to discontinuance of prior action were new injuries that were not barred by res judicata, although the issue of improper assessment of the dues was also raised in the prior action].) While the July 2011 decision states that res judicata applies to the extent that the claims against Highland “implicate events alleged to have taken place before the [February 24, 2009] filing of the original complaint” (86 AD3d at 474), that statement must be read in context of the decision, which permits maintenance of claims for fraudulent conveyances made after February 24, 2009.
Moreover, the March 13, 2012 decision expressly held that the alter ego allegations were sufficiently pleaded. Credit Strategies *588 and Crusader simply ignore that the alter ego allegations in the first amended complaint, which was at issue before the Appellate Division, are virtually identical to the alter ego allegations in the second amended complaint before this court. These allegations include not only general allegations as to Highland Capital’s commingling of the Highland entities’ funds and disregard of corporate formalities, but also Highland Capital’s preFebruary 2009 conduct, in connection with the fall 2008 note offerings, in causing Highland Financial to acquire Credit Strategies’ and Crusader’s assets, which were later the subject of the alleged March 2009 fraudulent conveyance.
The court accordingly holds that the res judicata doctrine does not bar UBS from proving its alter ego and fraudulent conveyance claims. To the extent that Credit Strategies and Crusader also argue that the March 2009 transfers were not wrongful because they were made to satisfy an antecedent debt, this argument assumes the bona tides of the fall 2008 note offerings. However, the validity of this loan transaction involves an issue of fact that cannot be resolved on this motion to dismiss.
Finally, Credit Strategies and Crusader request an order striking irrelevant allegations or allegations regarding claims on which UBS cannot recover in view of the Appellate Division decisions (e.g., fraudulent conveyances at the time of the fall 2008 note offering). (See Credit Strategies/Crusader mem in support at 20.) The court declines to order such relief at this time. In the event that UBS relies on allegations that are irrelevant, either on a motion for summary judgment or at trial, defendants can object to the court’s consideration of such allegations. If the case proceeds to a jury trial, a procedure can be fashioned in advance to ensure that no impermissible allegations are brought to the attention of the jury, and that the jury is clearly instructed on the purpose for which certain evidence of preFebruary 24, 2009 conduct is admitted.
The court has considered Credit Strategies’ and Crusaders’ remaining bases for dismissal of the complaint and finds them to be without merit.
HoldCo. Motion
Defendant HoldCo. moves to dismiss the complaint against it in the 2011 action. This complaint, like the complaints in the 2009 action, alleges that Highland Financial is SOHC’s alter ego, and that HoldCo. received transfers of assets (life settle *589 ment contracts) from Highland Financial in the alleged March 2009 fraudulent conveyance in which the affiliated transferee defendants in the 2009 action also participated. (Complaint §§ 112-117.) The complaint alleges two causes of action against HoldCo. The first is for fraudulent conveyance based on the March 2009 transfers. (Id. §§ 119-131.) The second is for tortious interference with contract, based on the allegation that HoldCo.’s participation in the fraudulent transfers tortiously interfered with UBS’ contractual relationship with the Fund counterparties by knowingly impairing UBS’ contractual right to be reimbursed by the Fund counterparties for losses on the warehouse assets. (Id. § 137.)
At the time HoldCo. served its motion, the Appellate Division had not yet issued its March 13, 2012 decision. HoldCo. sought relief on the grounds, among others, that UBS’ allegations were insufficient to plead an alter ego claim against Highland Financial; that the fraudulent conveyance claim cannot be predicated on transfers of the life settlement contracts by HoldCo. to Highland Financial because the life settlement contracts were returned to HoldCo. when the transaction was unwound in March 2009; that a tortious interference claim is not stated; and that the claims are barred by res judicata. (HoldCo. mem in support at 2-3.) In its reply, which was served after issuance of the March 13, 2012 decision, HoldCo. argued that UBS is barred from relying on any conduct or evidence that occurred or existed prior to February 24, 2009 to prove its post-February 24, 2009 alter ego or fraudulent conveyance claims. This argument is rejected for the reasons stated in connection with the Credit Strategies/Crusader motion.
To the extent that HoldCo. argues that the unwinding of the 2008 transaction — i.e., return of the life settlement contracts to HoldCo. — is a defense to this action, HoldCo. appears to assume that the fall 2008 note offering was a bona fide loan transaction — a factual issue that cannot be determined on the record of this motion to dismiss.
HoldCo. also moves to dismiss the tortious interference cause of action on the ground that it is predicated on an alter ego theory against Highland Financial that is not viable. For the reasons stated above, this contention is without merit.[2]
*590 The court has considered HoldCo.’s remaining bases for dismissal of the complaint and finds them to be without merit.
UBS Motion for a Preliminary Injunction
UBS moves under Debtor and Creditor Law § 279 for an order restraining defendants Credit Strategies and Crusader from transferring or otherwise disposing of property they received from Highland Financial in the alleged March 2009 fraudulent conveyance.
As a threshold matter, Credit Strategies and Crusader argue that UBS’ motion for a preliminary injunction is barred by Credit Agricole Indosuez v Rossiyskiy Kredit Bank (94 NY2d 541 [2000]). UBS counters that it is entitled to injunctive relief under the Debtor and Creditor Law based on its fraudulent conveyance claims.
The Credit Agricole doctrine governs the rights of a general creditor — i.e., an unsecured creditor that has not yet obtained a judgment — to preliminary injunctive relief under CPLR 6301. CPLR 6301 provides:
“A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiffs rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff.”
This statute thus provides two independent grounds upon which preliminary injunctive relief may be obtained. The Credit Agricole doctrine holds that “a general creditor has no legally recognized interest in or right to interfere with the use of the unencumbered property of a debtor prior to obtaining judgment.” (94 NY2d at 549.) Thus, provisional injunctive relief is not available “in a general creditor’s action on a debt, to prevent the dissipation of assets necessary to satisfy the anticipated money judgment.” (Id. at 547.) The doctrine recognizes that injunctive relief may be available where the suit involves a claim to “a specific fund” which qualifies as “the subject of the ac *591 tion” pursuant to CPLR 6301. (Id. at 548.)[3] It also recognizes that injunctive relief may be granted “under procedures independent of CPLR 6301.” (Id.) But where those bases for injunctive relief do not exist, Credit Agricole prohibits injunctive relief to prevent dissipation of the assets of the debtor in an action for money damages. In such an action, the creditor’s remedy is to seek an order of attachment to prevent transfers of property, pursuant to CPLR 6201. (Id., quoting Siegel, NY Prac § 327 at 498 [3d ed 1999].)
The Credit Agricole doctrine may not be avoided by alleging an equitable claim in an action in which a money judgment is the true object of the action. In Credit Agricole, the creditor brought an action on a debt, but also alleged that the defendant was insolvent and therefore owed a fiduciary duty to preserve assets for the benefit of general creditors. The Court reasoned that the inclusion of this equitable cause of action was “incidental to and purely for the purposes of enforcement of the primary relief sought here, a money judgment.” (Id. at 548.) In addition, the Court noted that
“[m]aking an exception on the basis that permanent equitable relief is sought in support of a suit essentially for money only would be too facile a way to avoid and undermine the settled proscription against preliminary injunctions merely to preserve a fund for eventual execution of judgment in suits for money damages.” (Id.)
The instant action is an action for money damages based on breach of contract and fraud, and does not involve a claim to a specific fund. Therefore, the issue is whether UBS may obtain injunctive relief independent of CPLR 6301 and, in particular, under Debtor and Creditor Law § 279, which authorizes a creditor that has not yet obtained a judgment to seek injunctive relief against fraudulent conveyances.[4] This issue, in turn, requires consideration of the interplay between Debtor and *592 Creditor Law § 279 and the Credit Agricole doctrine. There is surprisingly little New York authority on point.
In Daley v Related Cos. (179 AD2d 55, 60 [1st Dept 1992], mod on other grounds 184 AD2d 425 [1992]), the First Department held that a court may restrain a creditor from transferring property under section 279, but that the elements for a preliminary injunction under CPLR 6301 (likelihood of success on the merits, irreparable harm, and balance of the equities in the movant’s favor) must also be met. However, the Court undertook an analysis similar to that which would later be articulated in Credit Agricole. Thus, in the context of determining that the irreparable harm element had not been met, the Court reasoned that the action was only for money damages based on breach of contract claims, and that the plaintiff had no specific claim to assets that had allegedly been transferred. The Court also noted that an injunction may not be granted on the ground that the defendant threatens to dispose of assets and to render itself judgment proof.
While the parties have not cited, and the court’s own research has not located, other New York authority that addresses the circumstances in which a Debtor and Creditor Law § 279 injunction may be granted without violating the Credit Agricole doctrine, there is federal authority that addresses this issue under the analogous doctrine articulated in Grupo Mexicano de Desarrollo, S.A. v Alliance Bond Fund, Inc. (527 US 308 [1999]). This authority is persuasive, as the Credit Agricole Court approvingly cited Grupo Mexicano, stating that it reached “the very same conclusion” as the New York courts. (94 NY2d at 546.)
As UBS points out, federal courts have held that a court is empowered to grant a section 279 injunction, and does not violate Grupo Mexicano, where the action is not one brought “solely” at law. (See Trafalgar Power, Inc. v Aetna Life Ins. Co., 131 F Supp 2d 341, 350 [ND NY 2001] [emphasis omitted], modification denied 146 F Supp 2d 155 [granting preliminary injunction where creditor did not seek a money judgment on its Debtor and Creditor Law causes of action and only sought a judgment setting aside the conveyance]; Ally Bank v Reimer, 2010 WL 446025, 2010 US Dist LEXIS 7887 [ED NY, Jan. 29, 2010, No. CV 09-2795(ADS)(WDW), Wall, M.J.].)
*593 Other federal authority, which is more consistent with Credit Agricole (and Grupo Mexicano) focuses not on whether the action is brought solely for money damages, but on whether the action is brought primarily for a money judgment. JSC Foreign Economic Assn. Technostroyexport v International Dev. & Trade Servs., Inc. (295 F Supp 2d 366 [SD NY 2003]), a case involving facts similar to those at issue, was an action to enforce a judgment against a corporate judgment debtor and individual defendants alleged to be its alter egos. The plaintiff sought to set aside a fraudulent conveyance made by one of the alleged alter egos, and moved for a preliminary injunction restraining the alleged alter egos’ disposition of assets. In concluding that it lacked the power to grant the preliminary injunction, the court reasoned that the plaintiffs action was primarily for a money judgment, and that the alter ego claim “seeks a money judgment against the defendants by imposing liability on them, as alter egos, for the judgment previously obtained” against the corporate defendant. (Id. at 389.)
“The equitable relief that the plaintiff seeks, including the setting aside of alleged fraudulent conveyances, is incidental to, and indeed contingent upon the success of, the plaintiffs alter ego action. Before the plaintiff can seek equitable relief in enforcing the prior judgment, it must prove the legal liability of [the individual defendants] as alter egos. . . . [T]he equitable relief the plaintiff seeks is designed to effectuate the collection of money in satisfaction of that alleged legal liability.” (Id.; accord Fischer Diamonds, Inc. v Andrew Meyer Designs, L.L.C., 2006 WL 1720431, 2006 US Dist LEXIS 41362 [ED NY, June 21, 2006, No. CV-06-2737 (CPS), Sifton, J.]; Paradigm Biodevices, Inc. v Centinel Spine, Inc., 2013 WL 1915330, *4, 2013 US Dist LEXIS 66858, *10 [SD NY, May 9, 2013, No. 11 Civ. 3489(JMF), Furman, J.] [distinguishing JSC, and awarding preliminary injunction in connection with fraudulent conveyance claim where transfer was made by judgment debtor and claim did not depend on any finding that recipient of transfer was an alter ego of the judgment debtor; thus, “the viability of (plaintiffs) equitable claim (was) not contingent on the success of any legal claim”].)
Here, similarly, the court holds that the object of UBS’ action is money damages. The alter ego claim on which UBS’ *594 fraudulent conveyance claims are predicated is brought in order to recover on any judgment that UBS may ultimately obtain on its legal causes of action for breach of contract and fraudulent inducement. Moreover, under New York law, while an alter ego claim is equitable in nature, it “does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation” on others. (Matter of Morris v New York State Dept, of Taxation & Fin., 82 NY2d 135, 141 [1993].) UBS also has no equitable interest in the specific assets it seeks to restrain. Under all these circumstances, a preliminary injunction is not available under Debtor and Creditor Law § 279.
In view of this disposition, the court does not reach the issue of whether UBS otherwise meets its burden of demonstrating that the elements for a preliminary injunction are satisfied.
It is accordingly hereby ordered that the motion of defendants Highland Credit Strategies Master Fund, L.E and Highland Crusader Offshore Partners, L.E to dismiss the second amended complaint in the 2009 action is denied; and it is further ordered that the motion of defendant Highland Crusader Holding Corporation to dismiss the 2011 action and for sanctions is denied; and it is further ordered that the motion of UBS for a preliminary injunction is denied; and it is further ordered that the temporary restraining order, contained in this court’s order dated August 19, 2013, will remain in effect through and including November 26, 2013, in order to afford plaintiffs an opportunity to seek appellate relief, given the relative lack of appellate authority on the issues raised by the motion for a preliminary injunction.

. The 2009 and 2010 actions were consolidated under the 2009 index No. by order of this court (Fried, J.), dated Nov. 1, 2010. As of this date, the 2011 action (index No. 652646/11) has not been formally consolidated or joined with the 2009 and 2010 actions.

. Although this cause of action appears to be duplicative of the fraudulent conveyance cause of action, HoldCo. does not move for, and the court accordingly does not grant, dismissal on this ground.

. As defined by the Courts, a specific fund “is typically a specific res in which the plaintiff has a preexisting interest.” (Dinner Club Corp. v Hamlet on Olde Oyster Bay Homeowners Assn., Inc., 21 AD3d 777, 778 [1st Dept 2005] [internal quotation marks and citation omitted]; see Ficus Invs., Inc. v Private Capital Mgt., LLC, 61 AD3d 1, 12-13 [1st Dept 2009] [upholding preliminary injunction placing mortgages in escrow because the mortgages “constituted a specific res that (was) ‘the subject of the action’ ”].)

. Debtor and Creditor Law § 279 provides in pertinent part:
“Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in *592 a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may,
“a. Restrain the defendant from disposing of his property.”